In re Daniel Thomas **MUELLER**, Debtor.

**Jennifer ASPLIN and Donald Leidy, Plaintiffs,**

v.

**Daniel Thomas MUELLER, Defendant.**

**Bankruptcy No. 83 J 1275.**

United States Bankruptcy Court, D. Colorado.

Nov. 7, 1983.

Larry Berkowitz, and S. Morris Lubow, Denver, Colo., for plaintiffs.

Arthur Downey, and Jeffrey Cowman, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court on Plaintiffs' Motion for Summary Judgment on a Complaint to Determine the Dischargeability of a Debt under 11 U.S.C. § 523(a)(6). The debt alleged to be non-dischargeable is a judgment in a tort suit brought by the Plaintiffs against the Defendant in state court.

In the state court suit, Asplin and Leidy claimed that they were struck by a bullet fired by Mueller. The incident occurred in June, 1978, as Plaintiffs were traveling southbound on I–25 near the Alameda exit. Plaintiffs' car cut in front of a car which they alleged was driven by Mueller as they entered the highway. Mueller allegedly became extremely angry, drove up beside Plaintiffs' car as they pulled into the exit lane, and fired a single shot into their car. The bullet grazed Leidy's arm and lodged in Asplin's calf. They sued for negligence, assault and battery, extreme and outrageous conduct, and intentional infliction of emotional distress.

A two-day trial before a six person jury was held on April 7 and 8, 1982, in Denver District Court. The parties stipulated in the state court trial that both of the Plaintiffs were struck by a single bullet fired from a passing automobile, that Mueller was the owner of the passing automobile and that he owned the weapon subsequently seized by police officers. It was also stipulated that Mueller was a police officer for the City and County of Denver and was required to carry a gun at all times while in the city of Denver. Finally, the parties stipulated that neither Asplin nor Leidy was able to identify Mueller as the person who fired the shot after viewing both photographic and in-person lineups.

Both Plaintiffs testified about how the incident occurred and about the injuries they received. Defendant was called as an adverse witness by the Plaintiffs' counsel, but he asserted his privilege under the Fifth Amendment to all questions concerning his whereabouts on the date and time in question. Defendant presented no evidence.

The matter was submitted to the jury and they returned verdicts against Mueller and in favor of Asplin and Leidy. Asplin was awarded $25,000.00 in compensatory damages and $35,000.00 in punitive damages. The jury awarded Leidy $6,500.00 in compensatory and $35,000.00 in punitive damages.

Mueller filed a petition under Chapter 7 on March 3, 1983. He listed Asplin and Leidy as creditors for the amounts of the state court judgments.

The Plaintiffs then filed this Complaint to determine dischargeability. To their Motion for Summary Judgment they have attached the pleadings, pre-trial order, transcript, jury instructions, jury verdicts, judgments, and various post-trial motions from the state court proceeding. They maintain that the parties have fully litigated the issue of whether the Plaintiffs' injuries were the result of a willful and malicious act by the Defendant and that collateral estoppel bars the Defendant from relitigat-

ing that issue before this Court. The Defendant contends that a question of fact exists as to whether his actions were willful and malicious under the meaning of 11 U.S.C. § 523(a)(6).

■ On a motion for summary judgment, the Court must view the evidence in the light most favorable to the party opposing the motion. *Lindley v. Amoco Production Co.,* 639 F.2d 671 (10th Cir.1981). Summary judgment may only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Frito-Lay, Inc. v. Retail Clerks Union Local No. 7,* 629 F.2d 653 (10th Cir.1980).

To determine if there is any issue of material fact in this case, we must consider the applicability and effect of collateral estoppel.

■ Under the doctrine of collateral estoppel, a judgment on the merits in a prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action in a later suit between the same parties on a different cause of action. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Collateral estoppel protects litigants from the burden of relitigating an identical issue with the same party and promotes judicial economy by preventing needless litigation. *Parklane Hosiery Co., Inc. v. Shore, supra.*

On the question of the collateral estoppel effect of state court judgments in later proceedings in bankruptcy court to determine dischargeability, the Supreme Court has stated:

> If in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, [now § 523], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

*Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979).

Since the *Brown* case, the lower courts have disagreed about the use of collateral estoppel in dischargeability cases. Some courts have refused to apply collateral estoppel because of the view that it interferes with the exclusive jurisdiction of the bankruptcy court to determine the dischargeability of debts. *See, e.g., In re Rahm,* 641 F.2d 755 (9th Cir.1981).

■ The better view, and that which is most consistent with the Supreme Court's decision in *Brown, supra,* is that collateral estoppel should apply where the precise issue in the dischargeability determination was previously litigated by the parties in state court. *See, Matter of Ross,* 602 F.2d 604 (3rd Cir.1979); *Matter of Merrill,* 594 F.2d 1064 (5th Cir.1979); *In re Pitner,* 696 F.2d 447 (6th Cir.1982).

The Sixth Circuit in *Spilman v. Harley,* 656 F.2d 224 (1981), aptly described the rationale for the use of collateral estoppel in this situation:

> The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion. It must apply the statute to the facts and decide to discharge or not. Therefore, res judicata does not apply to prevent litigation of every issue which might have been covered in the state court proceeding on the debt. However, that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts. As the Court held in *Brown,* where the facts necessary for a dischargeability determination were not necessary to the determination in the prior judgment, the parties should not be bound ...
>
> However, where the factual issues necessary for dischargeability determination were also necessary to the state court determination, the parties would not have to anticipate the bankruptcy proceedings and the state courts would not be determining issues irrelevant to the state proceedings. Collateral estoppel is applied

to encourage the parties to present their best arguments on the issues in question in the first instance and thereby save judicial time. There is no reason to suppose that parties will not vigorously present their case on issues necessary to the state court proceeding or that the bankruptcy court will be any more fair or accurate than the state court in the determination of the facts. Thus, there is no reason to allow relitigation of facts previously litigated which were necessary to the outcome of that prior litigation. This Court holds that where all the requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues.

656 F.2d 224, 227–28.

■ Under federal law, the elements which must be shown for collateral estoppel to apply are:

(1) The issue must be identical to that involved in the prior action;

(2) The issue in the prior action must have actually been litigated; and

(3) The determination of the issue in the prior action must have been necessary and essential to the prior judgment.

*Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241 (5th Cir.1983); *Spilman v. Harley, supra.*

Plaintiffs contend that these three elements have been met in this case and they point to the jury's award of punitive damages to establish that there has been a finding that the Defendant's conduct was "willful and malicious" as those terms are used in § 523(a)(6). To determine if that is so, we must compare the standards under which the jury was instructed that it could award punitive damages and the standards by which the dischargeability of a debt is measured under § 523(a)(6). *See In re Pitner, supra.*

Section 523(a)(6) provides "A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debt or from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity."

Collier has defined the terms "willful" and "malicious" as follows:

An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word 'willful' means deliberate or intentional, a deliberate or intentional act which necessarily leads to injury.' Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

3 *Collier on Bankruptcy,* ¶ 523.16(1) at p. 523–118–19 (15 ed. 1982).

*See also In re Irvin,* 31 B.R. 251 (Bkrtcy. Colo.1983).

■ The award of punitive damages in civil actions in Colorado is governed by § 13–21–102, C.R.S. The jury in Asplin and Leidy's suit against Mueller was instructed, in accordance with this statute, that they could award exemplary damages if they found for the Plaintiffs and awarded them actual damages for their claims of negligence, assault, battery and outrageous conduct and if they found "beyond a reasonable doubt that the injury complained of was attended by circumstances of malice *and* a wanton or reckless disregard of the rights and feelings of the plaintiffs." (Jury Instruction No. 24) (emphasis added).

It is the Defendant's contention that the jury could have awarded punitive damages against him for conduct which they found was negligent and in reckless disregard of the rights and feelings of the Plaintiffs. He argues that such a finding is not equivalent to a willful and malicious injury under the Code, therefore collateral estoppel cannot be applied.

The Defendant's argument misreads the critical jury instruction. According to Instruction No. 24, the jury would have to find that the Defendant's actions were accompanied by *malice* as well as a reckless disregard of the Plaintiffs' rights and feelings in order to award punitive damages. The jury was not given an instruction which defined malice. However, it is safe

to conclude that the jury would interpret the term "malice" at least as stringently as the Bankruptcy Code definition, that is, wrongful and without just cause or excuse.

The jury was instructed that in addition to malice, they had to find that the Defendant's conduct constituted "wanton or reckless" disregard of the Plaintiffs' rights and feelings. They were further instructed on the definition of "willful and wanton" which, under Colorado law is not materially different than "wanton and reckless." *Foster v. Redding,* 97 Colo. 4, 45 P.2d 940 (1935). Willful and wanton was defined as:

> ... conduct *purposefully committed* which the person knew or reasonably should have known was dangerous to other persons or their property, and which he performed without regard to the consequences or the rights and safety of other persons or their property.

(Jury Instruction No. 26) (Emphasis added.)

The jury was further told that in order to find the Defendant acted recklessly it would have to find that he was aware of and consciously disregarded a substantial and unjustifiable risk that the result would occur. (Jury Instruction No. 19.) This instruction further provided that "the risk must be of such nature and degree that disregard thereof constitutes a *willful and wanton* deviation from the standard of conduct of a reasonable person in the situation." (Emphasis added.) According to these instructions, the jury had to find the Defendant's conduct was purposeful in order to find it was a "wanton or reckless" disregard of Plaintiffs' rights and feelings.

The end result of this combination of instructions was that it was necessary for the jury to find that the Defendant acted with malice and purposefully in order to assess punitive damages. This finding is identical to the standard of willful and malicious under § 523(a)(6). Therefore, collateral estoppel bars the Defendant from relitigating whether or not his conduct was willful and malicious so as to prevent the debt from being discharged.

Therefore, it is

ORDERED that Plaintiffs' Motion for Summary Judgment is granted and the debts owed by the Defendant to Jennifer Asplin and Donald Leidy are hereby determined to be nondischargeable.