739 F.2d 499
 Bankr. L. Rep. P 69,952
In The Matter of Russell Joseph LOMBARD, Bankrupt.
Russell Joseph LOMBARD, Plaintiff-Appellee,
v.
S. Arthur AXTENS or The Estate of S. Arthur Axtens,
Defendant-Appellant.
 No. 82-1247.
 United States Court of Appeals,
Tenth Circuit.
 July 16, 1984.
 
 1
 Carl A. Eklund, Smart, DeFurio, Brooks & Eklund, Denver, Colo., for plaintiff-appellee.
 
 
 2
 Eugene F. Costello, Eugene F. Costello, P.C., Denver, Colo., for defendant-appellant.
 
 
 3
 Before DOYLE, Circuit Judge, SEYMOUR, Circuit Judge, and SAFFELS, District Judge*.
 
 
 4
 SAFFELS, District Judge.
 
 Submitted on the briefs:
 
 5
 S. Arthur Axtens, or The Estate of S. Arthur Axtens [hereinafter Axtens], appeal from the January 26, 1982, opinion of the United States District Court of Colorado, which affirmed a January 12, 1981, order of the bankruptcy court in which summary judgment was granted Russell Joseph Lombard on his complaint for declaratory judgment. For the reasons stated below, we affirm.
 
 Background
 
 6
 In 1963, Axtens entered into an agreement with Russel Joseph Lombard and his wife, now deceased, to perform architectural services in the form of designing and engineering an urban housing project which Mrs. Lombard was promoting. After a portion of the services had been completed, it became apparent to Axtens that he would not be paid. Axtens proceeded to file an action in the District Court for the City and County of Denver, State of Colorado, Case No. B-96737, under which he obtained a default judgment against both Mr. and Mrs. Lombard. The default judgment was awarded on March 1, 1968.
 
 
 7
 On May 28, 1968, Lombard filed a voluntary bankruptcy petition in which he listed as a disputed, unsecured debt, the default judgment of March 1, 1968, which Axtens had obtained. The appropriate notice to creditors of Lombard's pending bankruptcy was sent to Axtens' attorney, David Kofoed, on June 17, 1968. No objection to this debt was filed with the bankruptcy court, and, by order dated April 14, 1969, Lombard obtained a discharge of his debts, including the debt created by the March 1, 1968, state court judgment obtained by Axtens.
 
 
 8
 Shortly after the discharge, Lombard and his wife purchased a house at 2835 Colfax Avenue, Denver, Colorado. On February 8, 1976, Mrs. Lombard died and the title to the house, then held in joint tenancy, passed to Mr. Lombard. On April 18, 1976, Mr. Axtens died.
 
 
 9
 On April 3, 1980, Axtens' estate, in an effort to collect on the March 1, 1968, state court judgment, caused to issue a Notice of Levy on Lombard's house. In response to the Notice of Levy, Lombard filed a notice of claim and homestead exemption in the Colorado state court. After a hearing on the issue of whether the property at 2835 Colfax Avenue, Denver, Colorado, was entitled to a claim of homestead, the exemption was granted.
 
 
 10
 On July 21, 1980, Lombard filed a complaint for declaratory judgment in the bankruptcy court seeking expungement of the lien and the filing of a satisfaction of judgment in regard to the 1968 default judgment. Lombard also sought a preliminary injunction from the bankruptcy court requesting that Axtens' estate be enjoined from employing any process to collect on the state court judgment. The preliminary injunction was granted on July 29, 1980. On January 12, 1981, the bankruptcy court granted summary judgment for Lombard on the declaratory judgment complaint, finding Axtens' debt was a dischargeable debt, and further that it had been discharged on April 14, 1969. This order was appealed to the United States District Court for the District of Colorado and was affirmed by that court.
 
 Issues
 
 11
 Three issues are raised by this appeal. First, Axtens maintains the district court erred in not finding Lombard collaterally estopped from relitigating the dischargeability issue in bankruptcy court. Second, Axtens claims the district court erred in not finding Lombard had waived his defense of dischargeability at the state court hearing on the claim of homestead exemption. Last, Axtens argues the court erred in finding the judgment based on architectural services obtained by fraudulent means was dischargeable under Section 17 of the Bankruptcy Act of 1898, 11 U.S.C. 35.
 
 Discussion
 A. Collateral Estoppel
 
 12
 Axtens contends that because the 1968 default judgment rendered by the state court contained findings that Lombard and others had procured Axtens' services by means of fraud and wilfull deceit, the issue of dischargeability of that debt was thereby fully litigated and decided by that court. Axtens further contends that state court findings on dischargeability matters are conclusive on the bankruptcy court and in this action should have operated to collaterally estop Lombard from relitigating the dischargeability issue in subsequent actions.
 
 
 13
 The doctrine of collateral estoppel precludes relitigation of issues actually and necessarily decided in a prior action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). It can only be applied to subsequent actions when (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. Peffer v. Bennett, 523 F.2d 1323 (10th Cir.1975). Hence, before Axtens can invoke the doctrine as to the issue of dischargeability in this action, he must demonstrate that the above-outlined four criteria have been met.
 
 
 14
 A review of the record demonstrates Axtens inability to successfully meet the four criteria. Under Section 17 of the Bankruptcy Act of 1898, formerly 11 U.S.C. 35,[1] before a debt could be deemed either dischargeable or non-dischargeable, a determination had to be made as to the nature of the debt. If the debt were found to be one for "services," then it was dischargeable, even if the service was procured by fraudulent means. On the other hand, if the debt were in the nature of either money or property fraudulently procured, then it was deemed non-dischargeble.
 
 
 15
 For Axtens to demonstrate that Lombard was collaterally estopped from relitigating the dischargeability issue in any subsequent proceeding, he would have to demonstrate that in 1968 the state court which awarded him a default judgment, in addition to litigating the issue of fraud, actually litigated the issue of whether architectural services were "property" within the meaning of Section 17 of the 1898 Act. The issue of whether architectural services were property within the meaning of Section 17 of the 1898 Act was never presented to the state court in the 1968 default judgment proceeding. Without the state court having addressed this issue and made this additional determination, the judgment is not entitled to collateral estoppel effect on any subsequent proceedings.
 
 
 16
 In light of the determination that this issue was never presented, and thus was never actually litigated, Axtens has not and cannot sufficiently demonstrate that he has met the criteria prerequisite to a finding of collateral estoppel.
 
 
 17
 Section 17c(2) of the former Bankruptcy Act granted exclusive jurisdiction to bankruptcy courts to determine whether particular debts were nondischargeable under Secs. 17a(2), (4) and (8). As to other classes of debts under Sec. 17a, however, state courts possessed jurisdiction concurrent with that of the bankruptcy court to determine dischargeability.
 
 
 18
 In Goss v. Goss, 722 F.2d 599 (10th Cir.1983), we held that collateral estoppel is applicable in the bankruptcy context where state courts have concurrent jurisdiction with the bankruptcy courts over an issue. The issue of whether or not collateral estoppel would apply to issues over which the bankruptcy court has exclusive jurisdiction, as in this case, was not, however, decided in Goss. Furthermore, in Goss, we recognized that this issue is one over which the circuits have disagreed. Goss, 722 F.2d 599, n. 10.
 
 
 19
 Because the necessary grounds for collateral estoppel have not been shown in this case, we need not reach the question of whether collateral estoppel applies to dischargeability questions over which the bankruptcy court has exclusive jurisdiction.
 
 B. Waiver of Defense of Dischargeability
 
 20
 Axtens next contends that Lombard, by failing to raise the defense of dischargeability in the state court hearing on his claim for homestead exemption, waived the benefit of this defense for any subsequent actions. Axtens also maintains that under Colorado Rule of Civil Procedure 8(c), Lombard was required to plead affirmatively his defense of dischargeability or be deemed to have waived the benefit offered by that defense.
 
 
 21
 The bankruptcy court, as affirmed by the district court, found that Lombard's failure to raise dischargeability as an affirmative defense in the hearing for homestead exemption did not operate to waive the benefit of the defense in later proceedings. The court determined that the defense was not waived at the hearing on the claim for homestead exemption because of the specialized nature of Colorado foreclosure proceedings.
 
 
 22
 The purpose of the Colorado homestead exemption is to secure to the householder a home for himself and his family, regardless of his financial condition. Woodward v. Peoples National Bank, 2 Col.App. 369, 31 P. 184 (1892).
 
 
 23
 The hearing on the homestead claim was conducted for the purpose of determining whether Lombard's residence was, in fact, eligible for grant of a homestead exemption; it was not conducted for the purpose of determining whether Lombard had been discharged from any debts in previous bankruptcy proceedings. Due to the specialized nature of the proceeding and the somewhat limited scope of the ensuing hearing, the bankruptcy court correctly concluded that waiver of the dischargeability defense should not be applied under these circumstances.
 
 
 24
 Further, we do not agree with Axtens that Lombard's filing a claim for homestead exemption constituted a responsive pleading under Colorado Rule of Civil Procedure 8(c) which required Lombard to affirmatively plead his previous discharge in bankruptcy.
 
 
 25
 Colorado Rule of Civil Procedure 8(c)[2] only requires affirmative defenses, such as discharges in bankruptcy, to be set forth when made in response to a preceding pleading. Lombard's filing for a homestead claim was not a responsive pleading to a preceding pleading as that phrase is interpreted in regard to Colorado Rule of Civil Procedure 8(c). A homestead claim is merely an instrument filed with the county clerk and recorder in which a householder describes the property, sets forth the nature and source of his interest in the property, and his claim to its designation as homestead property. Section 38-41-202, C.R.S.[3]
 
 
 26
 In light of the court's determination that filing a claim for homestead does not constitute "pleading to a proceeding pleading," under Colorado Rule of Civil Procedure 8(c) Lombard had no obligation to raise the defense of dischargeability in the original instrument itself, nor at the subsequent hearing.
 
 
 27
 We believe the bankruptcy court's determination, as affirmed by the district court, that the defense was not waived, was correctly determined.
 
 C. Architectural Services
 
 28
 Axtens last claim of error refers to the district court's affirmance of the bankruptcy court's finding that the architectural services provided by Axtens were dischargeable under Section 17 of the Bankruptcy Act of 1898 (formerly U.S.C. Section 35).
 
 
 29
 Clearly, under former 11 U.S.C. 35, the statute in effect in 1969, the year in which Lombard received his discharge, debts for services of all kinds were dischargeable under any and all circumstances, even if the service had been obtained by fraudulent means. Section 17a(2) of the 1898 Act[4] provided only that "liabilities for obtaining money or property by false representation or false pretenses" were excepted from dischargeability.
 
 
 30
 Axtens contends the services he performed which resulted in architectural designs were in actuality "property," and thus were not properly dischargeable under Section 17a(2), in that they were obtained by fraudulent means.
 
 
 31
 In Gleason v. Thaw, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915), the United States Supreme Court addressed the question of whether services provided by an attorney were property within the meaning of Section 17a(2). The court concluded that the services provided by an attorney were professional services which Congress never intended to be included in Section 17a(2). Axtens contends Gleason is distinguishable from this action in that the professional services rendered by an attorney result in an intangible work product, whereas architectural services result in a tangible work product. We do not see that distinction as persuasive, inasmuch as the attorney's work product becomes tangible in the form of a brief and the architect's work product becomes tangible in the form of either blueprints or designs. Accordingly, the district court's finding that Axtens had performed a "service" which did not constitute property under Section 17a(2) and was thereby dischargeable was correct.
 
 
 32
 AFFIRMED.
 
 
 
 *
 Honorable Dale E. Saffels, U.S. District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Section 17. Debts Not Affected by a Discharge. a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another;
 
 
 [2]
 Colorado Rule of Civil Procedure 8(c) states, in pertinent part:
 (c) Affirmative Defenses and Mitigating Circumstances. In pleading to a preceding pleading, a party shall set forth affirmatively ... discharge in bankruptcy ...
 
 
 [3]
 Section 38-41-202, C.R.S., states:
 Statement filed--spouse. (1) To create such homestead, the owner of the property (householder) shall record in the office of the county clerk and recorder of the county where the property is situate an instrument in writing describing such property, setting forth the nature and source of the owner's interest therein and stating that the owner is homesteading such property, which instrument may be acknowledged as provided by law.
 
 
 [4]
 Section 17a(2): "A discharge in bankruptcy shall release a bankrupt from all of his proveable debts, whether allowable in full or in part, except such as ... (2) ... liabilities for obtaining money or property by false pretenses or false representations ..."