**In re Elmer D. WERTH, Debtor.**

**Elmer D. WERTH, Debtor-Appellee,**

v.

**FIRST INTERSTATE BANK OF DENVER N.A. (Formerly Intrawest Bank of Denver, N.A. and First National Bank of Denver), Appellant.**

Civ. A. No. 84–K–2258.
Bankruptcy No. 80 B 03483 M.

United States District Court,
D. Colorado.

Nov. 4, 1985.

See also, 29 B.R. 220, 32 B.R. 442.

Harold A. Feder, Feder, Morris & Tamblyn, Paul D. Rubner, Denver, Colo., for debtor-appellee.

Richard L. Eason, Eugene N. Sprague, Eason, Sprague & Wilson, Denver, Colo., for appellant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

IntraWest Bank of Denver appeals from the January 31, 1984 decision of Judge Jay L. Gueck in the bankruptcy court, 37 BR 979. The bankruptcy court's January 31 order held that the damages sustained by Elmer Werth as a result of the bank's breach of contract exceeded the claim filed by the bank as an unsecured claimant in the personal bankruptcy of Elmer Werth. Therefore, the bankruptcy judge disallowed

the bank's claim for $525,634.39 in its entirety.

In reviewing the order of a bankruptcy court, the "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *See* Bankruptcy Rule 8013 and *Lease America Corporation v. Eckel*, 710 F.2d 1470, 1474 (10th Cir.1983). After reviewing the transcripts and the briefs filed in this court, I affirm the bankruptcy court's order.

## I.

### STATEMENT OF THE FACTS

Elmer Werth was a 50% shareholder in Fairview Farm, a large farm located in the San Luis Valley. Various crops were cultivated on its approximately 2760 acres. The real property on which the farm was located was heavily encumbered. Appellant held a second deed of trust. Since 1974, the bank had financed the operation of the farm through "crop loans"—annual loans to be repaid from proceeds of the year's crops. The manner of funding was through overdraft protection. Farm operations during the 1970's failed to generate enough profits to retire the bank's annual crop loans and by the end of 1978, the farm owed the bank in excess of $2,000,000.00.

In 1980, the bank initially refused to finance a crop loan because of the farm's outstanding debt which had been reduced to approximately $635,871.00. After numerous discussions, however, the bank agreed to finance another loan for $750,000.00 under certain conditions. One condition was that Mr. Werth would assign to the bank a second deed of trust to a condominium project called the Garrison Property (estimated value of $1.1 million).

Disbursements of the 1980 loan began through overdraft protection in mid-May of 1980. On or about June 23, 1980, the bank terminated all funding on the loan. It is undisputed that the bank's action was without prior notice to Werth or anyone else on behalf of the farm.

In August of 1980, Werth and the farm filed voluntary petitions in the bankruptcy court. These actions were given separate case numbers.

On February 24, 1981, the farm filed a complaint in bankruptcy court against numerous defendants (including Werth and the bank) requesting that the court allow the sale of the Farm realty [1] free and clear of liens. The bank answered the farm's complaint claiming that it had valid interests in portions of the farm's realty in the amount of $834,415.90. Werth did not answer the farm's complaint.

In December of 1981 a stipulation agreement between the farm, the bank, and some of the other defendants was approved and made an order of the bankruptcy court. The stipulation recited a contract price for the farm realty of $2,850,000.00. The provisions of the stipulation regarding bank are discussed below.

Werth was not a party to the stipulation agreement and the court ordered that the claims against those defendants who were not parties to the agreement be dismissed with prejudice.

The payments to the bank pursuant to the stipulation agreement did not satisfy the farm's indebtedness. The bank therefore filed a proof of claim in the amount of $525,634.39 against Werth's estate (claim # 39). The basis for the claim was Werth's personal guaranty of the farm's debt.

In November of 1982, Werth filed an objection to claim # 39. The principal basis for the objection was that the bank had breached its loan agreement, and that the alleged breach resulted in damages to Werth. The bankruptcy court agreed and, because Werth's damages exceeded the bank's claim, disallowed the claim.

## II.

### RES JUDICATA/COLLATERAL ESTOPPEL

Appellant's first argument is that the doctrines of *res judicata* and collateral es-

---

1. Farm realty refers to the real property on which the Farm was located and does not include the Farm's warehouse and other related farm processing facilities.

toppel[2] bar Werth from litigating the issue of the farm's indebtedness because the stipulation agreement entered into by the farm and the bank resulted in a final judgment of the farm's indebtedness. The bank argues that the preclusion of the relitigation of this issue also barred Werth from asserting the defenses of breach of contract and failure of consideration. I disagree.

Previously, I have stated that three requirements must be satisfied before claim preclusion operates:

1. There must be a final judgment in a court of competent jurisdiction on the merits;

2. The claims must be "identical"; and

3. The parties must be the same or in privity with those of the former litigation. *See Delve v. Three Lakes Water and Sanitation District,* 568 F.Supp. 662, 663 (D.Colo.1983). The claims in the two bankruptcy actions were not identical. In the farm's bankruptcy proceeding, the bank claimed an interest in the proceeds from the sale of the farm. In Werth's bankruptcy proceedings, the bank filed an unsecured claim for $525,634.39 against Werth as guarantor of the farm.

The four requirements of *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973), must have been satisfied in the earlier proceeding for collateral estoppel to apply.[3] I conclude that Werth did not have a full and fair opportunity to litigate in the earlier forum and that the issues decided by the stipulation agreement were not identical to those which were before the bankruptcy court in Werth's case.

■ First, Werth did not have a full and fair opportunity to litigate because neither he nor the farm had standing to object to the bank's claim in the farm's bankrupt-

cy proceeding. It clearly was the duty of the trustee to object to the bank's claim. The general rule is that when a trustee has been appointed, the debtor and his creditors may not object to the allowability of another creditor's claim. Collier, *Bankruptcy* § 502.01, at 502–14 (15th Rev.Ed. 1979). Further, a debtor's stockholders are not parties in interest. *Woodmar Realty Co. v. McLean,* 241 F.2d 768 (7th Cir.1957); Collier, *Bankruptcy* § 502.01, at 502–14 (15th Rev.Ed.1979).

■ Secondly, a stipulated judgment bars those matters which have been actually litigated. 1B Moore, Fed.Practice ¶ 0.409[5], at 326 (2d Ed.1965). The only issues decided by the stipulation agreement were:

1. In consideration of a portion of the amount due to the bank, the bank agreed to release its mortgage on all of the property.

2. The purchasers of the farm assumed two loans made by the bank to the farm. The two loans were secured by a deed of trust which provided the bank with a security interest in the property held by the farm.

3. The amount of $67,508.83 was to be paid by the farm to the bank from the sale proceeds in order to bring the previously described loan current so that it could be assumed by the purchasers of the farm.

4. The amount of $107,576.22 was to be disbursed to the bank.

■ The issues of Elmer Werth's liability as guarantor, the remaining liability of the farm, if any, to the bank, and the effect of the bank's breach of contract on the personal estate of Werth were not litigated in the farm's bankruptcy proceeding. It was not necessary to the judgment on the sale of the farm free and clear of liens in

---

**2.** The term *res judicata* will refer to claim preclusion and the term collateral estoppel will refer to issue preclusion. This case is concerned with both terms.

**3.** First, was the issue decided in the prior adjudication identical with the one presented in the subsequent action? Second, was there a final

judgment on the merits? Third, was the party against whom the plea is asserted a part or in privity with a party to the prior adjudication? And, fourth, did the party against whom the doctrine is asserted have a full and fair opportunity to litigate the issue in the prior adjudication?

the farm's bankruptcy proceeding to determine any rights or liabilities of the alleged guarantor. The stipulation agreement between the farm and the bank did not expressly or impliedly state what the status was of the remaining $525,634.39 due and owing to the bank. Had the parties intended to resolve that issue by a consent judgment, they would have stated their intent in the stipulation. The dispute regarding the claim for the remaining amount due and owing to the bank was raised for the first time in the Werth bankruptcy proceeding. The farm was not precluded from asserting the defense of breach of contract and neither was Werth as guarantor. The bankruptcy court correctly rejected the bank's affirmative defenses of *res judicata* and collateral estoppel.

### III.

### BREACH OF CONTRACT

■ The second issue on appeal is whether the evidence at trial established that the bank breached its loan agreement with the farm. The evidence showed (1) that a valid and enforceable contract existed between the parties, (2) that the bank partially performed the contract, and (3) that the bank discontinued its performance of the agreement without any notice to the farm or Werth. I affirm the bankruptcy court's holding that the bank breached the loan agreement.

Appellant argues that it was justified in suspending the loan because the impairment of the value of Werth's collateral violated a condition precedent to the loan agreement. The evidence produced at trial disclosed that certain conditions regarding security interests were to be met by the farm and by Werth personally in order to obtain the 1980 crop loan. As previously stated, Werth was required to assign to the bank a second deed of trust held on the Garrison condominium project. When Werth assigned the second deed of trust to

the bank he had a good faith belief that no problems existed with the first mortgage. The bank argues that when it learned of a foreclosure on the first mortgage it was justified in discontinuing the loan.[4] Upon careful review of the record, I agree with the bankruptcy court that the status of the first mortgage was not an expressed condition precedent to the loan agreement as required by law. *St. Germain v. Boshouwers*, 646 P.2d 952 (Colo.App.1982) (holding that since the parties did not use language that expressly stated or clearly implied an intention to create a condition precedent, plaintiff's payment of $25,000.00 for the purchase of outstanding stock was not necessary before the defendants had to perform).

■ The bank also appeals the bankruptcy court's finding that the breach of the loan agreement was the cause of Werth's bankruptcy. The bankruptcy court held that the testimony of the witnesses and the evidence presented at trial established that the bank's conduct of breaching the loan agreement in mid-season without any notice to the parties who relied on the loan, resulted in the bankruptcy of the farm and of Werth. I agree with this holding.

### IV.

### DAMAGES

■ Lastly, appellant argues that the bankruptcy judge did not properly analyze and calculate the elements of damage asserted by Werth. Although this portion of the opinion is not expressed clearly, I agree with the result reached. The bankruptcy court sits as a court of equity when passing on the allowance or disallowance of claims. The court may inquire into the conscionability of a claim, *In Re Elkins-Dell*, 253 F.Supp. 864, 867, 869 (E.D.Penn. 1966), and it has full power to inquire into any claim asserted against the estate and to disallow it if the claim is without lawful existence. *Pepper v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).

---

4. Ralph Adams not only testified that the status of the first mortgage was not a stated condition of the loan agreement (Vol. VII transcript, p. 647 11. 17–20), but that he had no knowledge of the pending foreclosure when he suspended funding to the Farm (Vol. VII transcript, p. 674 11. 3–10).

The amount of money claimed by the bank is $525,634.39 plus accrued interest. The bankruptcy court did not need to discuss the possible damages sustained by Werth. Once the judge concluded that the bank had breached its contract with Werth, the bank's claim was unenforceable against Werth. Collier, *Bankruptcy* § 502.02, at 502–24 (15th Rev.Ed.1979). Because the bank's claim is unenforceable against Werth, it was properly disallowed in accordance with 11 U.S.C. § 502(b)(1) (1985 Cum.Supp.) which states,

> "(b) ... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that— (1) such claim is unenforceable against the debtor, and unenforceable against property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured".

I affirm the bankruptcy court's order of January 31, 1984.