**In re Ward Hunting AUSTIN, Jr., aka Ward H. Austin, aka Ward Austin, Debtor.**

**PACIFIC ENERGY AND MINERALS, LTD., Plaintiff,**

**v.**

**Ward Hunting AUSTIN, Jr., Defendant.**

**Bankruptcy No. 86–B–07628–J.**
**Adv. No. 88–A–0172.**

United States Bankruptcy Court,
D. Colorado.

Nov. 23, 1988.

Peter M. Susemihl, Susemihl, Lohman, Kent, Carlson & McDermott, P.C., Colorado Springs, Colo., for plaintiff.

Dean P. Grossenbach, Colorado Springs, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Plaintiff's Motion for Summary Judgment to except its claim from discharge in bankruptcy pursuant to 11 U.S.C. § 523(a)(2), (4) and (6), and the Debtor's Response thereto. For the reasons set forth below, the Court grants the Plaintiff's Motion, and orders that its principal claim be excepted from Debtor's discharge in bankruptcy.

## BACKGROUND AND FACTS

The facts pertinent to this decision are as follows:

1. Plaintiff corporation ("Plaintiff" or "Creditor") and the Defendant ("Debtor") had a business relationship commencing in 1978 wherein the Debtor became a stockholder, director and vice president of the Plaintiff. Debtor was the principal officer responsible for the Plaintiff's oil, gas and mineral exploration and lived in and carried out his responsibilities in the city of Suva, the country of Fiji. This relationship resulted in subsequent disputes and litigation which is the subject of this adversary proceeding.

2. Plaintiff commenced a civil action against the Debtor on or about December 1984, in District Court, County of El Paso, State of Colorado. Generally, Plaintiff alleged that the Debtor (a) breached his fiduciary duty as a director and officer of the corporation, (b) misappropriated, misused, and converted for his own use and benefit, corporate funds and assets, and (c) intentionally interfered with corporate business and relationships, and intentionally damaged the rights and property of the business. A pretrial conference was held in the matter in December, 1985 and a trial was first scheduled for August 19, 1986.

3. On August 19, 1986, the Judge in state court did not, as requested by the Debtor, grant a continuance of the scheduled trial date and immediately thereafter the Debtor filed for protection under Chapter 11 of the Bankruptcy Code.

4. On June 22, 1987, the Bankruptcy Court granted to the Plaintiff relief from the automatic stay and permitted the Plaintiff to proceed against the Debtor and allow litigation of Plaintiff's claims and Debtor's counterclaims in state court. A new, second trial date was set in state court for October 13, 1987.

5. On the second scheduled trial date, the Bankruptcy Court granted the Debtor's motion to convert the case to a Chapter 7. This, again, stayed the Plaintiff from proceeding in state court with a trial on the merits.

6. The Plaintiff filed a motion for the Bankruptcy Court to abstain from hearing the matters still pending in the state court which the Bankruptcy Court granted on December 2, 1987. Trial to the state court was, again, rescheduled for February 16, 1988.

7. At commencement of the trial on February 16, 1988, counsel for the Debtor

appeared and advised, on the record, that the Debtor did not desire to proceed to litigate the matter and/or was not able to proceed to litigate the matter and consented to default judgment being entered against the Debtor.

8. Plaintiff's counsel, on instruction from the state court Judge, prepared and submitted to the Court Findings of Fact, Order and Judgment which was signed by the Judge and entered as a default judgment on May 29, 1988 ("Judgment").[1]

9. The Judgment entered in state court recited, in pertinent part, the following:

(a) "The Defendant did not appear [at trial] except through his counsel ... who indicated that his client would not appear and that his client Ward H. Austin did not want to litigate this matter. Defendant ... has not appeared for trial after protracted court proceedings and was not prepared either to defend the claims of [Plaintiff] or to present evidence as to his counterclaim."

(b) Defendant "was a fiduciary with regard to the corporation."

(c) "Actions of the Defendant resulted in the loss of personal property ..." that he "appropriated unauthorized funds from the company ..." and he "removed funds from the Suva bank account in the unauthorized amount of $100,838.00."

(d) "The Court finds that all of the actions of Defendant Ward H. Austin were intentional and amounted to larceny, theft, and embezzlement, and that judgment should enter in favor of the Plaintiff and against the Defendant in the amount of $173,-329.00."

(e) "The Court further finds that the Defendant has engaged in intentional and deceitful activities which were intended to economically injure the Plaintiff...."

(f) "The Court further finds that the Defendant and his attorney have been given full and ample opportunity to present evidence of their counterclaim and to defend against the allegations made by the Plaintiff, and that the Defendant has failed to do so."

(g) "Defendant [Debtor] has filed a counterclaim in this matter ... [which was] dismissed by the court for failure of the Defendant to supply documentation and discovery to support said claims. The counterclaims [of Defendant] ... should be dismissed for lack of prosecution and the default of the Defendant Austin should enter on the Plaintiff's Complaint filed herein."

(h) "[J]udgment be entered for the Plaintiff and against the Defendant in the amount of $173,329.00 plus punitive damages in a like amount for a total judgment of $346,658.00.... [J]udgment is awarded based upon the intentional, deceitful, and fraudulent acts of the Defendant...."

Significantly, the record does not reflect any objection or appeal by the Debtor to the Judgment prepared by Plaintiff's counsel and entered by the state court.

## OPINION

■ Plaintiff maintains it is entitled to entry of a summary judgment, by the doctrine of collateral estoppel, on the issue of whether its claim is to be excepted from discharge pursuant to Section 523(a)(2), (4) or (6).[2]

---

1. Findings of Fact, Order and Judgment was entered, in part, on the basis of the pleadings and the unrebutted affidavit of Jonathan Stoen, a director and officer of the Plaintiff corporation.

2. Plaintiff invokes the "Full Faith and Credit" provisions of 28 U.S.C. § 1738, as well. It provides in pertinent part: "[j]udicial proceedings of any court of any such State, ... or copies thereof, shall be proved or admitted in other courts within the United States.... Such ... judicial proceedings ... shall have the same full faith and credit in every court within the United States...." A copy of the state court Judgment meeting the requirements of the "full faith and credit" statute was submitted to this Court. Very few bankruptcy dischargeability cases and Bankruptcy Court reported opinions reference "full faith and credit." However, "[t]he federal courts are required by the full faith and credit

Plaintiff argues that entry of findings of fact and a default judgment, by consent, in the state court proceedings precludes relitigation of the same issues in Bankruptcy Court. Debtor denies that entry of a default judgment has preclusive effect on relitigating issues raised, but not fully tried, in the state court action. Debtor asserts that the Bankruptcy Court has "exclusive jurisdiction to determine nondischargeability of debt which arises from a state court judgment," and maintains this Bankruptcy Court should proceed to try this adversary proceeding.

The principal issue before the Court is whether or not entry of a default judgment, by consent, in state court may have preclusive effect on, or collaterally estop, the Bankruptcy Court with regard to questions of discharge of debt in bankruptcy. Two Tenth Circuit cases are instructive, if not controlling, on this issue. *In re Wallace*, 840 F.2d 762 (10th Cir.1988); *Matter of Lombard*, 739 F.2d 499 (10th Cir.1984).

In *In re Wallace*, the creditor filed a complaint in state court alleging the defendant fraudulently obtained monies and "intentionally, willfully, and maliciously converted monies...." Plaintiff obtained from the Court, after a non-jury trial on the merits, a money judgment which stated, in part, that "the defendant [Wallace] embezzled funds...." Wallace subsequently filed bankruptcy. The judgment

creditor filed an adversary proceeding to except from discharge his claim against Wallace on the grounds of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

The Court of Appeals upheld the Bankruptcy Court's decision granting the creditor's motion for summary judgment, stating that: "[T]he doctrine of collateral estoppel may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability...." [3] *In re Wallace, supra* at 764; *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).[4] The court in *Wallace* ruled that:

> [C]ollateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment.
> *In re Wallace, supra* at 765.

The court examined each of these three necessary conditions for imposing collateral estoppel. For our purposes, the single key condition cited in *Wallace* which is not readily found in the instant case is the second condition, namely, that "the issue was actually litigated" in the prior action.

---

provision of 28 U.S.C. § 1738 (1982) to 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.'" *Bolling v. City & County of Denver, Colo.*, 790 F.2d 67, 68 (10th Cir.1986). In Colorado default judgments are given preclusive effect. *Ortega v. Board of County Commissioners of Costilla County*, 683 P.2d 819 (Colo.App.1984) applying the tests as set forth in *Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396 (1974). At least two Bankruptcy Courts have indicated that "full faith and credit" accorded a state judgment will have preclusive effect on the Bankruptcy Court in dischargeability litigation. *In re Byard*, 47 B.R. 700 (Bankr.M.D.Tenn.1985); *In re Eadie*, 51 B.R. 890 (Bankr.E.D.Mich.1985). This theory, then, provides a secondary basis on which Plaintiff may be entitled to summary judgment.

**3.** The Court was cognizant of and referenced the principal that, ultimately, it is the Bankruptcy Court, and not state court, that determines

whether or not a debt is dischargeable. *In re Wallace, supra* at 764.

**4.** *Brown v. Felsen* eliminated the doctrine of *res judicata*, or claims preclusion, which, it was argued, could have prevented Bankruptcy Courts from relitigating claims previously litigated in state court. The Supreme Court, however, discussed collateral estoppel, or issue preclusion, in footnote number 10. That reference has been widely cited by many courts, including Tenth Circuit Courts in *In re Wallace, supra*, and *In re Mueller*, 34 B.R. 869 (Bankr.D.Colo.1983). "If, in the course of adjudicating a state-law question a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the Bankruptcy Court." *Brown v. Felsen, supra* 99 S.Ct. at 2213.

This is crucial because clearly, the distinguishing feature between *Wallace* and the instant case is that a trial on the merits was held in *Wallace;* a default judgment was entered, by consent, in the instant case.

While a state court trial had been held in *Wallace,* the *Wallace* court *ruling* does not require that an actual trial be held to collaterally estop subsequent relitigation of dischargeability issues by a Bankruptcy Court; it just requires that the issues be "actually litigated." Significantly, the court notes that the state court judgment:

> "[R]eflects that the issues necessarily addressed to establish [liability] ... were *actually litigated* by the parties. Wallace cannot complain that he was denied a *full and fair opportunity to present his case or litigate the relevant issues.*" (Emphasis added.) *In re Wallace, supra* at 765.

The focus, the reliance, and the emphasis is placed by the *Wallace* court on a debtor's "opportunity to present his case" or to "litigate the relevant issues." *See also, In re Werth,* 54 B.R. 619, 622 (Dist.Ct.Colo. 1985).

The issues pertaining to discharge of Plaintiff's claim here were litigated in state court. They were not actually and fully *tried* and then decided by a judge or jury, but they *were* litigated, for almost three years. All pleadings and discovery had been concluded, pre-trial procedures and preparation had been completed, and three trial dates arrived, only to be averted by the Debtor at, literally, the last hour. "Actually litigated" does not, necessarily and always, mean actually and conclusively tried before a judge or jury. "Actually litigated" can be construed to mean that the dispute proceeded through all phases of litigation appropriate to the case, while providing full and fair protection of litigants' rights, and according to the parties a meaningful opportunity for a trial on the merits.

The case law is clear that for collateral estoppel to bar the Bankruptcy Court from relitigating a dischargeability issue, an *actual trial* is not an imperative. *See, Interdynamics, Inc. v. Firma Wolf,* 653 F.2d 93 (3rd Cir.1981); *American Equipment Corp. v. Wikomi Mfg. Co.,* 630 F.2d 544 (7th Cir.1980); *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530 (5th Cir.1978); *In re Bottagaro,* unpublished opinion of Judge Finesilver, decided 10/13/87, case no. 86–F–2424, 95 B.R. 766 (Vol. IV B.C.R., p. 289–291), affirming Judge Brumbaugh in *Lukas v. Bottagaro,* also an unpublished opinion, decided 12/20/86, adversary no. 86–J–0661 (Vol. IV B.C.R., p. 13–14).

█ A consent judgment or stipulation and agreement entered as a Court Order, for example, can constitute a final adjudication on dischargeability issues. A consent judgment can have collateral estoppel effect on the Bankruptcy Court. *Interdynamics, Inc., supra* at 96–97 ("A consent decree, although negotiated by the parties is a judicial act. (Citations omitted.) Such a decree possesses the same force with regard to *res judicata* and collateral estoppel as a judgment entered after a trial on the merits."). *Kaspar Wire Works, Inc., supra* at 539 (Consent decrees have been given *res judicata* effect in many cases and, where appropriate, may be given conclusive effect as to the issues involved.). *American Equipment Corp., supra* at 546 (Consent judgments will be given preclusive effect and bar a party from relitigating those issues.).[5] *In re Bottagaro, supra* at 767 (Consent judgments ... represent a final decision on the merits ... where the parties intended the stipulation ... to adjudicate the issues raised. The court properly precluded ... relitigating those issues in a nondischargeability action.). *In re Werth, supra* at 623 (A stipulated judgment may bar those matters which have been actually litigated.). *See, In re Austin,* 26 B.R. 753 (Bankr.S.D.Fla. 1983) (Consent judgment can effect collateral estoppel.).

---

5. The Court aptly noted that: "Judicial decrees disposing of issues in active litigation cannot be treated as idle ceremonies denigrating the judicial process." *American Equipment Corp., supra* at 546.

The key second Tenth Circuit case controlling collateral estoppel, *Matter of Lombard*,[6] stands primarily for the proposition that four criteria must be satisfied before collateral estoppel is invoked:

(1) [T]he issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Matter of Lombard, supra* at 502; *In re Werth, supra* at 622; *In re Mueller, supra* at 872.

In *Lombard*, the creditor obtained a pre-petition default judgment which the debtor sought to have discharged in bankruptcy. In a declaratory judgment action initiated by the debtor, the creditor argued that relitigation of the dischargeability issue was collaterally estopped as a result of the earlier state court default judgment which contained findings that debtor procured architectural services by means of fraud and willful deceit. The Tenth Circuit Court of Appeals ruled that collateral estoppel did not, in that particular case, bar relitigation of the issues on which default judgment had been entered. The court reasoned that, since a specific question unique to the *Lombard* case had not been "presented to" nor "addressed by" the state court, the default judgment was not "entitled to collateral estoppel effect."[7] Conversely, had the missing issue been "presented to the state court in the ... default judgment proceeding" or "addressed by the state court," then implicitly the default judgment could have been "entitled to collateral estoppel effect on any subsequent proceedings." *Matter of Lombard, supra* at 502.

■ Not all default judgments will have, nor should they have, preclusive effect on dischargeability issues in Bankruptcy Court. That would deprive the Bankruptcy Court of its ultimate authority and responsibility to decide issues of dischargeability. *In re Wallace, supra* at 764; *In re Mueller, supra* at 871. Moreover, default judgments which are not entered on consent, or which may be the product of, or tainted by, mistake, fraud, clerical error, lack of due process, denial of debtor's *opportunity* to a full and fair trial, or other similar infirmity, would be defective and ineffective to collaterally estop the Bankruptcy Court from hearing a dischargeability case.

■ The Court has a right, indeed it has an obligation, to review the circumstances in which a default judgment has been entered. *See, Greenberg v. Schools*, 711 F.2d 152, 156 (11th Cir.1983) (A court may look into factual circumstances behind a settlement agreement to determine if the underlying obligation from the agreement was originally a nondischargeable debt); *In re McDonald*, 73 B.R. 877, 882 (Bankr.N.D. Tex.1987). *Lukas v. Bottagaro, supra* at 13 ("Even though a bankruptcy court is required to look behind a lower court judgment in determining dischargeability ... where the claims are actually and necessarily decided by consent in previous litigation, collateral estoppel applies."). If, after examination of the default judgment, a Bankruptcy Court determines it was (a) entered properly, (b) supported by sufficient pleadings and testimony or affidavit, and (c) not otherwise infirm, then the Court may be collaterally estopped from proceeding.

There are *three decisive factors* in this case which compel the Court to rule that, under these circumstances, the state court default judgment collaterally estops, and should estop, the relitigation of dischargeability issues before the Bankruptcy Court. First there are the clear and certain findings of the state court judge and pleadings of Plaintiff respecting the elements of

---

6. *In re Wallace* references *Matter of Lombard* as a case in which one of the four conditions of collateral estoppel was not satisfied.

7. The question not presented to nor addressed by the state court, which entered default judgment was, essentially, whether or not "architectural services" constituted "property" under Section 17 of the Bankruptcy Act of 1898 and thus qualified as a proper nondischargeable *type* of debt. *See, Matter of Lombard, supra* at 502.

fraud, embezzlement, larceny, and false representation, as well as willful and malicious intent to injure. Second there were three different opportunities, three trial dates, which afforded full and fair opportunity to the Debtor to try the issues on their merits. The Debtor chose to not go to trial on each of those three different occasions.

Third, and perhaps most important, the Court set up two specific designated opportunities to have the issues raised by the Plaintiff tried in state court (i.e. 06/22/87 Order granting relief from stay and 12/02/87 Order of abstention). Both designated trial opportunities were purposely avoided by the Debtor. *On those two occasions, the Bankruptcy Court deliberately excused itself as the forum for the litigation and directed the parties to state court for trial and final resolution of the issues.*[8] *The Debtor elected to avoid, perhaps evade, both of those opportunities for a trial on the merits and, instead, knowingly consented to entry of default judgment.*

█ With respect to the specific issue of whether or not punitive damages may be deemed not dischargeable under Section 523, there is little case law and the Courts appear divided. *In re Wallace, supra* at 762 (punitive damages nondischargeable); *In re McDonald, supra* at 882 (punitive damages dischargeable); *In re Brown,* 66 B.R. 13 (Bankr.D.Utah 1986) (dischargeable); *In re Gelman,* 47 B.R. 735 (Bankr.S. D.Fla.1985) (nondischargeable); *In re Mueller, supra* at 872 (nondischargeable).[9] Because *Wallace* and *Mueller* are cases in this District and each excepted from discharge the punitive damage element of a damage award, this Court is constrained to also rule that the state court punitive damages in this case are not dischargeable.

On a motion for summary judgment the Court must view the pleadings and factual inferences in the light most favorable to the party opposing summary judgment. *R–G Denver v. First City Holdings of Colorado, Inc.,* 789 F.2d 1469, 1471 (10th Cir.1986). That party, the Defendant/Debtor here, however, cannot rest on allegations in the pleadings to rebut the movant, he must respond with specific facts demonstrating genuine issues requiring resolution at trial. *In re American Cable Communications, Inc.,* 62 B.R. 536, 538 (Dist.Ct.Colo.1986). If there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, then summary judgment is proper. *Frito–Lay, Inc. v. Retail Clerks Union Local 7,* 629 F.2d 653 (10th Cir. 1980).

In this case, there are no material facts remaining to be litigated; they were disposed of in the state court litigation and decided by the state court findings of fact and conclusions of law. The Bankruptcy Court is collaterally estopped from relitigating those issues. Plaintiff is entitled to summary judgment as a matter of law on its claims under Sections 523(a)(4) and (6) of the Bankruptcy Code. It is so ordered and judgment is entered accordingly.

---

**8.** Judge Roland J. Brumbaugh entered both orders. When abstaining, the Judge even ordered that "the state litigation should proceed...."

**9.** A useful discussion of the Colorado statute and level of proof required for assessment of punitive damages is found in *Mueller, supra* at 872–73.