**UNITED STATES of America, Plaintiff,**

v.

**Warren L. McFERRAN, Defendant.**

**Civ. A. No. H–81–2901.**

United States District Court,
S.D. Texas,
Houston Division.

March 23, 1983.

Robert Darden, Houston, Tex., for plaintiff.

Douglas E. Gilliss, Houston, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

McDONALD, District Judge.

The Court has before it a Motion for Rehearing and Motion for Default Judgment filed by the Respondent. The Respondent asks that the Court reconsider its

denial of the Respondent's earlier Motion for Judgment on the Pleadings filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (hereinafter Fed.R.Civ.P.). The Respondent also moves the Court for a Default Judgment on the Counterclaim contained in the Pleadings pursuant to Rule 55(b) of the Fed.R.Civ.P. For the reasons set forth below, the Respondent's Motion to Reconsider should be GRANTED and the Motion for Default Judgment should be DENIED.

On November 6, 1981, the government filed its Complaint, seeking to recover payments made to Respondent under the Air Force Health Professions Scholarship Program. The government alleged that the Respondent had failed to complete his obligations under his agreement with the Air Force and is therefore required to return a portion of the payments. The respondent answered that the government's action is barred under 28 U.S.C. § 2415(a), which governs suits for money damages brought by the government. The Respondent then filed its Motion for Judgment on the Pleadings.

Section 2415(a) of 28 U.S.C. provides, in part:

> ... [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later....

In denying the Respondent's Motion for Judgment on the Pleadings, the Court held that there was a material issue of fact that could not be resolved by an examination of the pleadings alone: whether the letter the government sent the Respondent on June 30, 1980, was an administrative proceeding, triggering the special one-year limitations period provided for in § 2415(a); or whether the letter constituted an audit within the meaning of U.S. v. Withrow, 593 F.2d 802

(7th Cir.1979), triggering the standard six-year limitations period in § 2415(a). If the one-year limitations period is applicable, the government's suit is barred, the statute having expired June 30, 1981, one year from the date of the letter of indebtedness. If the six-year limitations period is applicable, the government's suit is timely, since the period would not expire until June 30, 1986. The Court invited the parties to submit their own interpretations of Withrow. It is these interpretations, offered in support of and in opposition to the Respondent's Motion for Rehearing, that the Court considers here.

The Respondent urges that the six-year limitations period applied in Withrow must not be applied to the case at bar, which involves no statutory or regulatory scheme. The Respondent urges that instead the one-year limitations period prescribed in § 2415(a) for "final decisions ... rendered in applicable administrative proceedings" is apposite. In support of both positions, the Respondent cites United States v. Skidmore, Owings & Merrill, 505 F.Supp. 1101 (S.D.N.Y.1981).

For reasons detailed below, the Court finds that the Respondent is correct in his first assertion: that the mere mention of the word "audit" in the letter of June 30, 1980, cannot bring the instant case within the orbit of Withrow. In Withrow, the Seventh Circuit held that the government's cause of action for recovery of overpayments to a provider under the Medicare program did not accrue, as the provider argued, when he closed his facility, but rather when the parties' rights and liabilities had been determined by means of an audit. Pointing out that Withrow arose under the statute establishing the Medicare program and that a set of regulations detailed an elaborate system of payment, audit, and administrative appeal, the Court held that the relationship of the parties to that case was such that both "clearly contemplated that only after the audit by the fiscal intermediary could either party be liable to the other." Prior to the time of the audit, neither party had a cause of

action against the other. [citing *Crown Coat Front Co., Inc. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967).] *Withrow* 593 F.2d at 804.

By contrast, in the case at bar neither the audit nor any other aspect of the parties' relationship is covered by statute or regulation. Nor does the contract between the parties mention an audit. There is no indication in the record before this Court that the parties expected there would be an audit or that such an audit was necessary to determine their rights and liabilities. On the other hand, there is every indication that the government considered the Respondent's liability to be fixed long before the audit occurred; from January 1976 through November 1977 it sent the Respondent five letters demanding repayment. It appears to the Court that the purpose of the audit was not to fix liability, but rather to make unforeseen revisions of the debt or perhaps to check its status and accuracy given its longstanding character.

Moreover, to apply *Withrow* in the absence of a statutory or regulatory scheme would allow the government an indefinite period of time in which to bring suit, deprive the respondent of recourse for delay, and contravene the statutory intent of 28 U.S.C. § 2415(a). The government would continually be able to renew its cause of action simply by conducting a new "audit" of the Respondent's account—the procedures for and timing of audit not being legally defined. Without a regulatory scheme providing for administrative appeal, the Respondent in the instant case would not, as the party in *Withrow,* 593 F.2d at 806, have adequate recourse if the audit were delayed. Thus, in bringing suit on claims involving any kind of an audit, the government would theoretically be subject to neither of the limitations periods mandated in § 2415(a).

Consequently, because an audit was not contemplated by the parties here as part of their agreement and because application of *Withrow* would free the Government from the constraint of any statute of limitations, the Court holds that *Withrow* is distinguish-able from the case at bar. The Court agrees with the reasoning in *United States v. Skidmore, Owings & Merrill,* 505 F.Supp. 1101, 1105 (S.D.N.Y.1981). In that case, a district court refused to apply *Withrow* where the contract at issue was not governed by a regulatory framework.

The Court cannot, however, accept the Respondent's second assertion that the one-year limitations period in § 2415(a) applies to the government's claim. In making that assertion, the Respondent implies that the letter dated June 30, 1980, is "a final decision . . . rendered in an applicable administrative proceeding" under § 2415(a). Yet the language of the statute itself makes clear that this letter of audit is not the result of an administrative proceeding, for such proceedings must be "required by contract or by law." 28 U.S.C. § 2415(a). In the legislative history discussed by the Respondent, it is also emphasized that the one-year tolling provision applies only to administrative proceedings which are "required" and "mandatory." Senate Report No. 1328, 89th Cong., 2nd Sess. 2, reprinted in [1966] U.S.Code Cong. & Ad.News 2502, 2504. The contract that concerns the Court here does not require an audit or any other administrative proceeding; nor does the record before the Court indicate that such an audit is required by statute or regulation.

Moreover, neither the holding nor the reasoning in *Skidmore* supports the Respondent's position that the letter is an administrative proceeding for the purpose of the one-year tolling provision. In *Skidmore,* which involved a suit for breach of a design and construction contract, the District Court for the Southern District of New York found that the cause of action accrued on the date of breach rather than on the date of an administrative proceeding held in connection with the suit. The Court held that the administrative proceeding triggered neither the six-year nor the one-year limitations period, since the contract in that case was not governed by a regulatory framework. *Skidmore,* 505 F.Supp. at 1104, 1105. Thus, the holding in *Skidmore* does

not lead to the conclusion that the one-year provision should be applied in the present case.

In *Skidmore,* the court reasoned that: To hold that a cause of action for breach of contract does not arise until a final administrative decision fixes liability would read the one-year provision out of the statute.

505 F.Supp. at 1105. While this reasoning supports the Respondent's concern about the danger of applying *Withrow* to cases other than those arising under certain other statutes, it does not support the Respondent's contention that the one-year provision should be applied here. Thus, in the face of the language in 28 U.S.C. § 2415(a) that describes "applicable administrative proceedings" as "required by contract or by law," and in the absence in the case law of any indication to the contrary, the Court holds that the government's letter of June 30, 1980, which reported the audit to the Respondent, did not trigger the one-year statute of limitations under § 2415(a).

■ While we find that the letter of audit triggered neither the one-year nor the six-year limitations period, the question remains: when did the statute of limitations begin to run on the government's claim? In their pleadings and supporting memoranda, the parties have alleged numerous dates as triggering the six-year statute of limitations. Respondent compares his case with default by a borrower under the federally insured student loan program, 20 U.S.C. § 1080(e)(2).[1] Under this theory, "default" would have occurred no later than September 30, 1975—180 days, the interim specified under § 1080(e)(2), after the Respondent's discharge from the Air Force. This would put the government's claim, commenced on November 6, 1981, a little more than a month beyond the limitations period.

The government, on the other hand, maintains that its cause of action accrued on January 9, 1976, when it sent the Respondent its original demand for repayment; or, alternatively, that its cause of action accrued in December 1975, when Air Force officials first learned of the Respondent's debt. Under either theory the government's claim would be timely. The government cites no authority in support of its assertion that the statute of limitations began to run on the date of demand. In support of its theory that the cause of action accrued when officials became aware of the debt, the government cites 28 U.S.C. § 2416:

For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which ... (c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances; or ...

The government maintains that it was not until December 1975 that all the pertinent figures had reached the Air Force accounting office and been computed.

Consequently, the Court finds that a material issue remains as to the date of accrual of the government's cause of action. Did it accrue on "default," determined with relation to the Respondent's dismissal from school or discharge from the Air Force? Did it accrue on the date of demand? Or did it accrue, according to § 2416(c), when the government had all the information it needed to bring suit? The parties have not provided authority in support of their respective theories sufficient to enable the Court to decide the issue on the pleadings. In addition, the Government's argument as to the applicability of § 2416(c) introduces a factual issue into the controversy: what information did the government need in order to bring suit, and was it indeed without that information until December 1975? The Court thus finds that the issues can

---

1. 20 U.S.C. § 1080(e)(2), "Default of Student Borrower Under Federal Loan Insurance Program," provides in part that:

... The term "default" includes only such defaults as have existed for (A) one hundred and twenty days in the case of a loan which is repayable in monthly installments, or (B) one hundred and eighty days in the case of a loan which is repayable in less frequent installments.

best be resolved in a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. The parties are directed to provide support for their arguments as to when the government's cause of action accrued, and the government is directed to produce affidavits as to the factual issue referred to above.

■ Next, the Respondent requests that the Court enter a Default Judgment on the counterclaim contained in the Pleadings on the grounds that the government failed to enter a reply in compliance with Rule 7(a) of the Fed.R.Civ.P. and with the Court's Order dated May 20, 1982. On December 8, 1981, Respondent filed an answer to the complaint in this cause of action and a counterclaim against the government. More than five months after the counterclaim was filed the government had failed to file an answer. On May 20, 1982, the Court entered an Order directing the government to file a response to the Respondent's counterclaim within ten (10) days. On June 22, 1982, one month after the order of May 20 and seven months from the filing of the Respondent's counterclaim, the government filed its answer to the Respondent's claim.

■ In light of the government's failure to file an answer to the counterclaim within the sixty (60) day time period imposed by Rule 12(a), the Respondent claims that he is entitled to a default judgment. Generally, the entry of default judgment is committed to the discretion of the district judge, Wright & Miller, *Federal Practice & Procedure: Civil* § 2685. In civil cases against the government when the "default is due to a failure to . . . otherwise defend, the court typically will refuse to enter a default, or if a default is entered, it will be set aside." *Id., Civil* § 2702 at p. 355. Furthermore, under Fed.R.Civ.P. 55(e), "no judgment by default shall be entered against the United States . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the Court." By the express terms of the Rule, default judgment may be entered only when the claimant's allegations have been established by satisfactory proof. *Mason v.*

*Lister,* 562 F.2d 343 (5th Cir.1977); *Carroll v. Secretary, Department of Health, Education and Welfare,* 470 F.2d 252 (5th Cir. 1972); *Campbell v. Eastland,* 307 F.2d 478 (5th Cir.1962). In the case at bar, the Court is unable to discern the merits of the Respondent's counterclaim based upon the pleadings. The Court has considered less severe sanctions but considers it inappropriate in the case at bar, the government's delay was slight and no prejudice has been shown by the defendant. Therefore, the Respondent's Motion for a Default Judgment should be DENIED.

Accordingly, the Court's Order of May 20, 1982, denying the Respondent's Motion for Judgment on the Pleadings, is VACATED, the Respondent's Motion to Enforce Order and Strike Pleadings is DENIED, and the Respondent's Motion for Default Judgment is DENIED. The Respondent's Motion for Rehearing is GRANTED: the Respondent's Motion for Judgment on the Pleadings will be reheard as a Motion for Summary Judgment under Fed.R.Civ.P. 56. The parties are directed to file memoranda and affidavits in support of and in opposition to summary judgment within twenty (20) days from the date of this Order.

The Clerk shall file this Order and provide a true copy to counsel for all parties.