**In re Bruce S. HINKLEY, Debtor.**

**H.Y. ROBINSON, Sr., Plaintiff,**

v.

**Bruce S. HINKLEY, Defendant.**

**Bankruptcy No. 82–00012.**

**Adv. No. 82–0073–H1.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Feb. 26, 1986.

Rhett G. Campbell, Morris & Campbell, Houston, Tex., for defendant, Bruce S. Hinkley.

## MEMORANDUM OPINION

MANUEL D. LEAL, Bankruptcy Judge.

In this adversary proceeding to collect upon a promissory note, the defendant seeks to have the claim embodied in the note disallowed under 11 U.S.C. § 502(b)(1) under the state law theories of illegality, duress, absence of consideration and discharge of a surety due to the release of the principal obligor. Defendant requested a trial by jury which was denied because the court holds there is no right to a jury trial in claims litigation. Trial of this matter occurred on October 21, 22, and 23, 1985; a detailed analysis of the litigation is required in order to address the copious issues, both substantive and procedural, raised by the parties. The court holds that the claim of the plaintiff H.Y. Robinson, Sr., is allowed in full and the objections raised by the defendant to this claim are denied.

### FINDINGS OF FACT

Stanton Hinkley, the debtor defendant's father, and H.Y. Robinson, entered into an agreement on March 3, 1971 whereby Hinkley was to sell and deliver a boat to Robinson for an agreed upon sum. Robinson paid S. Hinkley $28,450.00 in two checks to cover the purchase price of the boat. S. Hinkley cashed the checks but never delivered the boat. Based on this transaction, an indictment was handed down in Walker County, Texas, charging Hinkley with theft by bailee. At the time of this indictment, Stanton had three other indictments pending against him, two in Walker County, and one in federal district court.

Trial was set on the Walker County indictment on July 10, 1972. Approximately one month prior to the trial date, Stanton's attorney, Mr. Crawford, allegedly sought to withdraw from the case. Stanton testified he was suspicious of his attorney; specifically, as to whether he was properly

Alvin A. Horne, Houston, Tex., for plaintiff, H.Y. Robinson, Sr.

representing Stanton's interests in the case. Crawford allegedly told Stanton that Robinson was an extremely powerful man in Walker County.

When S. Hinkley appeared at the Walker County courthouse with his wife and daughter on July 10, 1972, he was seeking a continuance in order to obtain new counsel. However, he was surprised to discover Mr. Crawford, his ex-attorney, in the Walker County District Attorney's office. Outside of the Walker County courtroom, Stanton was allegedly told that his bail bond had been revoked and that the presiding judge was pushing the criminal case to trial.

S. Hinkley thought he would be put in jail due to the influence of this powerful man, which his attorney, Crawford constantly reminded him of. In the corridor of the courthouse, the idea of a promissory note as restitution for the monies spent by Stanton was proposed. (It is contested as to who made the proposal.) In return, Robinson would recommend dismissal of the indictment. Robinson required all members of the Hinkley family to sign the note, which included his wife, daughter, and son. The wife and daughter were present at the courthouse and signed the note, but debtor Bruce Hinkley, defendant herein, was not in attendance for he was working as a medical intern at St. Joseph's Hospital in Houston, Texas.

On July 10, 1972, S. Hinkley met with his son in Houston, Texas at the hospital in order to obtain his son's signature on the note. Bruce Hinkley was a cum laude graduate of both Rice University and Baylor College of Medicine. His father told him he would be "tried and would go to jail" if Bruce did not sign the note. Bruce Hinkley hesitated, and voluntarily left his father to phone the Robinson's attorney, Ted Hirtz. Mr. Hirtz did not speak with Bruce Hinkley at the time immediately prior to the signing of the note. Bruce Hinkley did speak with Hirtz' secretary who informed him that Hirtz had nothing to say to him. Bruce Hinkley stated that this conversation was highlighted by the secretary telling him that his father would go to jail if he did not sign the note. Shortly thereafter, Bruce Hinkley signed the promissory note.

Stanton presented the note executed by debtor to Mr. Hirtz as restitution. On July 14, 1972, Mr. Hirtz wrote the Walker County district attorney a letter in which he informed the court of the note as restitution. The letter specifically stated:

> Please allow this letter to serve as a *request* in behalf of my clients, H.Y. Robinson, Sr. and his son, that the indictments against Mr. Hinkley be dismissed. If the Court *chooses* to grant a motion to dismiss the indictments, please ask Mrs. Toxie Baker, Clerk of the Court, to prepare a letter confirming that the indictments have been dismissed.

Plaintiff's Exhibit 4 (Emphasis added).

On July 19, 1972, the indictment was dismissed for "insufficient evidence."

On April 2, 1976, H.Y. Robinson, Sr. commenced a civil lawsuit in the 12th Judicial District of Walker County, Texas against Bruce Hinkley, his father, mother and sister seeking to recover the $28,450 owed on the promissory note. A citation of service was issued by the Court against Bruce on April 2, 1976 and service was effectuated on May 7, 1976. Bruce Hinkley's answer asserted a general denial and the affirmative defenses of duress and lack of consideration in the state court. Bruce Hinkley amended his answer four times in state court. Robinson answered all allegations with a general denial.

On January 14, 1982, Bruce Hinkley filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Eastern District of Oklahoma. On January 19, 1982, the entire lawsuit which was pending in Walker County was removed by Bruce Hinkley to the U.S. Bankruptcy Court for the Southern District of Texas. Hinkley demanded a jury trial at the time that he removed the case.

Bruce Hinkley's Chapter 11 plan was confirmed on August 13, 1985 by the U.S. bankruptcy court in Oklahoma. The order,

signed by Judge James E. Ryan, specifically provided that "with respect to the claim of H.Y. Robinson, Sr., the Debtor in Possession will pay the amount of the claim in full to H.Y. Robinson, Sr., his successors or assigns, after said claim has been determined as a result of a final judgment in any court having jurisdiction of the action brought to enforce the claim."

B. Hinkley moved for leave of this court to file his Fifth Amended Answer which was contested by the plaintiff. The answer asserted a bankruptcy defense to Robinson's claim, that Robinson's claim should be disallowed under 11 U.S.C. § 502(b)(1) because the claim would be unenforceable under state law. B. Hinkley labelled this objection to claim as a counterclaim. At the trial held in October, 1985, the Court noted that no order was signed granting the defendant leave to file his Fifth Amended Answer. However, on October 22, 1985, Judge Leal signed an order granting leave.

Bruce Hinkley argues that the claim of Robinson must be disallowed because the "veiled threats" by Plaintiff of a long prison term for his father render the note unenforceable due to duress, illegality and lack of consideration. In addition, Bruce Hinkley alleges, under state commercial law, that he was discharged of his surety obligation when Robinson dismissed a lawsuit against Stanton Hinkley, the principal obligor without the surety's consent. Bruce Hinkley also raises two procedural arguments for disallowance of the claim. First, he moves for default judgment because the plaintiff did not file a written reply to his 11 U.S.C. § 502(b)(1) objection which was labelled by Hinkley as a counterclaim. Hinkley argues that Rule 8(d) requires a reply and if none is filed, Hinkley's averments are admitted, which would warrant the entry of a default judgment on his counterclaim. Hinkley's second procedural argument is that plaintiff's lawsuit is barred by the statute of limitations.

## LEGAL DISCUSSION

The Court's role is limited to an interpretation and application of the statute which Congress has promulgated and existing case law. Consistent with this objective, a rigorous analysis is presented herein.

### A. Jurisdiction

■ A fundamental issue in any bankruptcy proceeding is whether the proceeding is a core or non-core matter. Under the Bankruptcy Amendments Act, the bankruptcy court has the authority to issue final orders and judgments in core proceedings, 28 U.S.C. § 157(b)(1), while in non-core proceedings, the court has the limited authority to submit proposed findings of fact and conclusions of law to the district court for *de novo* review. This requires the court to analyze the various causes of action raised by the parties and make a finding that they sufficiently affect the debtor-creditor relationship so as to justify the issuance of a final judgment. The Robinson complaint is to recover on a promissory note and to reduce this note to a claim against the estate. As a defense, the debtor objects to this claim relying on the federal right enacted by Congress to have a claim disallowed. Congress specifically provides that the "allowance or disallowance of claims against the estate ..." are core proceedings. 28 U.S.C. § 157(b)(2)(B).

■ The ability of the bankruptcy judge to rule on claims against the estate is central to the bankruptcy system. *In re Simmons,* 765 F.2d 547, 551 (5th Cir.1985). This is because a bankruptcy court is a court of equity when passing on claims. *In re Werth,* 54 B.R. 619, 623 (D.C.Colo.1985). The bankruptcy judge may inquire into the conscionability of a claim and he or she has full power to inquire into any claim asserted against the estate and to disallow it if the claim is without lawful existence. *Id. Citing Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939) (citations omitted). Some courts have utilized a two step approach, analyzing claims on first legal and then equitable grounds. "The bankruptcy court must first determine that the claim is cognizable as a legal obligation when viewed within the context of nonbankruptcy and bankruptcy laws,

**344**

and second that the effect of the allowance of the claim in the bankruptcy proceedings would be just and fair in relation to other creditors' under principles of equity jurisprudence." *In re Beverages International, Ltd.,* 50 B.R. 273, 279 (Bankr.Mass. 1985) quoting A. DeNatale and P. Abram, *The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors,* 40 Business Lawyer No. 2, 417, 419 (1985).[1]

■ Since the plaintiff filed a lawsuit in the U.S. Bankruptcy Court to recover its claim against the estate, and the debtor exercised his right to object to that claim, the issue has been reduced to claim allowance litigation. As such, it is a core proceeding.

The authority to decide whether the litigants have a right to a jury trial in this proceeding is found in the bankruptcy rules of procedure. Bankr.R. 9015(b)(3), promulgated one year after the *Marathon*[2] case states:

(3) *Determination by Court.* On motion or on its own initiative the court may determine whether there is a right to trial by jury of the issues for which a jury trial is demanded or whether a demand for trial by jury in a proceeding on a contested petition shall be granted.

Therefore, this Court will properly determine whether defendant is entitled to a jury.

[5] Defendant has demanded a trial by jury on all issues raised by the complaint. The jury demand was struck because the parties did not consent to the judge conducting a jury trial. We hold that there is no right to a jury trial on the issue of whether a claim against the estate is to be allowed or disallowed, for it has its root in equity.

■ The bankruptcy judge, in addressing the issue of whether he can conduct a jury trial must examine three distinct and separate issues:

1) whether the jury demand complied with the procedural requirements of Bankruptcy Rule 9015;

2) whether the litigants have a right to a jury trial in the bankruptcy cause of action presented; and

3) whether the bankruptcy judge can conduct a jury trial.

Bankruptcy Rule 9015 promulgated by the United States Supreme Court after the *Marathon* decision provides the procedure by which issues triable of right by jury shall be demanded and states in subsection (b):

(1) *Time:* Form. Any party may demand a trial by jury of any issue triable

**1.** One court has even gone so far as holding that a suit between two creditors over the same proceeds which, if determined, would determine which creditor's claim was to be allowed was a "core matter". "Though not posited as objections to claims, the thrust of this case is to reach a determination as to which of the claims should be allowed, and which should not. Litigation which adjudicates those issues is clearly a 'core proceeding' within the contemplation of 28 U.S.C. 157" *McKenny v. McGraw,* 50 B.R. 437, 440 (Bankr.N.D.Ohio 1985).

**2.** Pursuant to the rulemaking power of the United States Supreme Court, 28 U.S.C. § 2075, Chief Judge Warren Burger submitted the Bankruptcy Rules of Procedure to the Congress on April 25, 1983. The process of enacting the rules commenced on August 9, 1982 when the Advisory Committee on Bankruptcy Rules transmitted them to the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States. They were then submitted to the Supreme Court. The advisory committee report specifically states, "in approving the proposed bankruptcy rules, and recommending them to the Judicial Conference, your committee is aware of the decision of the Supreme Court in *Northern Pipeline Constr. Co. v. Marathon Oil Co.,* dated June 28, 1982.... Your committee in consultation with the Advisory Committee on Bankruptcy rules does not believe the rules are, or will be, seriously affected by the decision or any ensuing legislation."

Almost a full year after the *Marathon* decision, the Supreme Court submitted the Bankruptcy Rules to Congress. A section on jury trials was included in the rules which were enacted. 28 U.S.C. § 2075 specifically states that the rules "shall not abridge, enlarge, or modify any substantive right." Therefore the Supreme Court, in promulgating Rule 9015, must adhere to the view that there is a substantive right to a jury trial in the bankruptcy court.

by a jury by serving on the other parties a demand therefor in writing not later than 10 days after service of the last pleading directed to such issue. The demand may be indorsed on a pleading of the party. When a jury trial is demanded it shall be designated by the clerk in the docket as a jury matter.

The demand was timely filed when the case was removed to the bankruptcy court.

Although refraining from deciding the issue, the Fifth Circuit recently stated "there is some doubt whether bankruptcy courts can conduct jury trials in light of *Marathon* and the Bankruptcy Amendments Act." *Holland Ins. Co. v. Shephard J. Roy*, 777 F.2d 992, 999 (5th Cir. 1985). Several district courts in construing the 1984 Amendments have held that the bankruptcy judge can conduct a jury trial on a core proceeding because the judge can enter a binding judgment upon a jury's verdict. *See, e.g., In re O.P.M. Leasing Services*, 48 B.R. 824, 830 (S.D.N.Y., 1985). ("There is no question that a bankruptcy court has the authority to conduct a jury trial when the bankruptcy court has the power to issue a final judgment in a case"); *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727 (M.D.Ga.1985) ("The authority granted to the bankruptcy court under 28 U.S.C. 157(a) included the authority to refer 'all proceedings ... arising under title 11 to the bankruptcy judge' vests the bankruptcy court with the same authority to conduct a jury trial as exists in the [district court]." Bankruptcy judges have similarly held, *In re Rodgers & Sons, Inc.*, 48 B.R. 683, 687 (Bankr.W.D.Okla.1985) ("A bankruptcy judge has the implied power to conduct jury trials in all instances where such right exists except the expressly limited class of personal injury or wrongful death claims"); *In re Saker & Co.*, 37 B.R. 802, 811 (Bankr.S.D.N.Y.1984) ("If ... there is no constitutional objection to the bankruptcy court entering a final judgment in a traditional bankruptcy dispute, there can be no similar objection to its conducting a jury trial in order to reach the decision embodied in the judgment."); *accord In re Maudlin*, 52 B.R. 838, 841 (Bankr.N.D.

Miss.1985); *In re Arnold Print Works, Inc.*, 54 B.R. 562, 569 (Bankr.D.Mass.1985). A summary of the existing case law supports the view that the doubt raised by the Circuit Court should be resolved in favor of the bankruptcy judge conducting a jury trial where the issue itself was triable by a jury.

The crucial aspect in this issue is whether the defendant has a right to a jury trial on the cause of action which forms the basis of Robinson's proof of claim in the bankruptcy case. The proper inquiry for the bankruptcy judge is to analyze the nature of the cause of action in order to determine if that issue is triable by jury. *See In re O.P.M. Leasing Services*, 48 B.R. 824, 826 (S.D.N.Y.1985), *In re Rodgers & Sons*, 48 B.R. 683, 688 (Bankr.E.D.Okla. 1985); *In re Energy Resources*, 49 B.R. 278, 281 (Bankr.D.Mass.1985). The allowance or disallowance of claims was a summary proceeding over which no jury right attached. *Katchen v. Landry*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). The United States Supreme Court specifically held that even if the issues raised may be triable in state court to a jury when the same issue arises in bankruptcy court, the proceeding is triable in equity and no jury right exists. *Id.* at 336, 86 S.Ct. at 476. This reasoning has been followed by several cases which construe the 1984 Amendments. *See Hauytin v. Grynberg*, 52 B.R. 657, 661 (Bankr.D.Colo.1985); *In re Lee*, 50 B.R. 683–84 (Bankr.Md.1985); *In re O'bannon*, 49 B.R. 763, 765 (Bankr.M.D. La.1985). The *Hauytin* case is on point, for a plaintiff sued several defendants for damages arising out of a conversion and to enforce a guarantee. While the suit was pending in state court, the defendants filed bankruptcy. The plaintiff removed the action to bankruptcy court where the debtor had objected to the plaintiff's claim. Plaintiff sought a jury trial and the court held that *Katchen v. Landy* was still the law requiring the jury demand to be struck. Similarly, in our case, we hold, based on *Katchen v. Landy,* that no right to a jury exists on an objection to claim even though

the same issues may have been triable to the jury in state court.

### B. Counterclaim

Defendant has moved for default judgment because plaintiff failed to file a responsive pleading to the cause of action listed in his fifth amended answer as a counterclaim. The pleading was filed as follows:

### COUNTERCLAIM

#### Count I
#### Objection to Claim

17. Debtor objects to the claim of Robinson pursuant to 11 U.S.C. § 502(b)(1), because the claim is unenforceable against Debtor under applicable state law.

18. Robinson is being served with a copy of this objection to claim upon his attorney of record. No other service is necessary at this time.

19. The affirmative defenses and factual allegations of paragraphs 6 through 16, *infra*, inclusive, are realleged and incorporated by reference herein for all purposes.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Debtor prays that the Court will disallow the claim of Robinson, and will grant Debtor such other and further relief as may be proper.

Debtor argues that since this was labeled a counterclaim, the federal rules of civil procedure require a response and if none is forthcoming, a default judgment will be entered. The relevant rules of civil procedure are Rule 12(a) which states: "[t]he plaintiff shall serve his reply to a counterclaim in the answer within 20 days after service of answer"; and Rule 8(d)

(d) **Effect of Failure to Deny.** Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

However, Rule 8(c) provides:

When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

■ The issue is whether the counterclaim is in reality an affirmative defense. For the following reasons, the Court holds that it is.

First, Bankr.R. 3007 provides that an objection to claim is a contested matter governed by Rule 9014 unless an objection is joined with a demand for relief of the kind specified in R. 7001. *In re Simmons,* 765 F.2d 547, 551 (5th Cir.1985) Rule 7001 enumerates 10 types of proceedings. Nowhere in defendant's pleading is this objection to claim combined with the type of relief enumerated in R. 7001. Therefore, Rule 9014 would govern. This rule provides "No response is required under this rule unless the court orders an answer to a motion." The Court did not so order. The Fifth Circuit has interpreted the claims process similarly when it stated, "the filing of a proof of claim is tantamount to the filing of a complaint in a civil action, and the [debtor's] formal objection to the claim the answer." *In re Simmons, supra* at 551.

Second, the federal rules of civil procedure provide that illegality, duress, failure of consideration and any other matter constituting an avoidance are affirmative defenses. FRCP 8(c).

■ Third, the policy which this Circuit has mandated is that any doubt as to whether a default judgment should be entered ought to be resolved in favor of allowing the case to be tried on the merits. *Davis v. Parkhill-Goodloe Co.,* 302 F.2d 489, 495 (5th Cir.1962). This is because judgments by default are a drastic remedy and should be resorted to only in extreme circumstances. *Charlton L. Davis & Co.*

*v. Fedder Data Center*, 556 F.2d 308, 309 (5th Cir.1977). The case cited by the defendant *Zweygardt v. Colorado National Bank*, 51 B.R. 214 (D.Colo.1985) has little application to the facts at hand. The Court held that a creditor can assert a counterclaim for a pre-petition cause of action embodying his claim in a lawsuit prior to the time that the debtor formally objects to the creditor's claim. The debtor had argued that allowing this counterclaim would infringe on his right to object to a claim at any time by forcing him to object in this particular lawsuit. Since our case is substantially different, the precedental value is minimal.

In conclusion, because there is doubt as to whether the counterclaim is a counterclaim or an affirmative defense, and because the entry of default judgment is committed to the discretion of the trial judge, *see United States v. McFerran*, 568 F.Supp. 804, 809 (S.D.Tex.1983) defendant's motion for default judgment is Denied.

## C. Bar by Limitations

Defendant asserts for the first time in his post trial memorandum that plaintiff's suit is barred by the statute of limitations which governs promissory notes in the State of Texas. Through five answers, defendant Bruce Hinkley never asserted the statute of limitations as an affirmative defense.

The rule of law in Texas is that the statute of limitations is not available to a litigant without having been pleaded by him. *Beaumont Coca Cola Bottling Co. v. Cain*, 628 S.W.2d 99, 100 n. 1 (Tex.Civ. App.—Beaumont 1981 *writ ref. n.r.e.* ); *Hales v. San Antonio, U. & G.R. Co.*, 111 Tex. 434, 238 S.W. 1106, 1107 (1922); *See also* Tex.R.Civ.P. 94; 2 R. McDonald, Texas Civil Practice § 7.40, at 268 (1970 Rev. Vol.) Rule 8(c) of the Federal Rules of Civil Procedure requires the defense of the statute of limitations to be affirmatively pled in the party's defensive pleading. Failure to do so waives the defense unless the failure was corrected by amendment. *Combee v. Shell Oil Co.*, 615 F.2d 698, 700 (5th Cir.

1980); *Dunn v. Koehring Co.*, 546 F.2d 1193 (5th Cir.1977) *modified on other grounds*, 551 F.2d 73 (5th Cir.1977).

Neither Bruce Hinkley's original answer filed with the state court nor his subsequent amendments, including his fifth amended answer, plead the statute of limitations as an affirmative defense. Within Hinkley's defense that Robinson voluntarily released the primary obligor Stanton Hinkley without the consent of the surety, Bruce Hinkley peripherally mentions a statute of limitations problem as to the litigant, Stanton Hinkley. This allegation, in no way places the plaintiff on notice that Bruce Hinkley is asserting the defense of statute of limitations.

Even assuming Hinkley pleaded this defense, we find no merit in his contention. The note was executed on July 10, 1972. Plaintiff commenced this lawsuit against Bruce Hinkley on April 2, 1976. This is well within the four year period. Nevertheless, Hinkley argues in his post trial memorandum, that the plaintiff's failure to serve Stanton Hinkley with service within four years acts as a bar to Robinson's recovery against his son, Bruce Hinkley.

Tex.Rev.Civ.Stat. Art. 5527 requires all actions for debts evidenced by or founded upon written contracts to be commenced and prosecuted within four years after the cause of action shall have accrued. Plaintiff commenced the suit within four years but Bruce Hinkley argues that the failure to serve his father with citation for four years is a bar to the plaintiff's maintaining a suit against him. It is true that "the mere filing of a suit will not interrupt or toll the running of a statute of limitation; that to interrupt the statute the use of diligence in procuring the issuance and service of citation is required." *Rigo Manufacturing Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex.1970). In adjudicating whether a party has used due diligence in obtaining service, the proper standard is that which an ordinarily prudent person would have used in the same or similar circumstances.

*Gibraltar Savings Ass'n. v. King*, 474 S.W.2d 758, 760 (Tex.Civ.App.—Houston [14th Dist.] 1971).

■■■ In applying the law to the facts, defendant has cited no case in which a third party can assert another defendant's statute of limitations defense. In our case, a citation was issued against Bruce Hinkley on April 2, 1976 and served on May 7, 1976. As defendant has cited this Court to no law to the contrary, defendant's argument that plaintiff did not use due diligence in serving his father is rejected for it is not his defense to assert.

### D.  Objection to Claim

11 U.S.C. 502(b)(1) provides:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—

(i) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured

■■■ The validity of claims and defenses are to be determined under state law. *In re Maxcy*, 45 B.R. 268, 270 (Bankr.D.Mass. 1985).

■■■ A party objecting to a claim has the initial burden of presenting a substantial factual basis to overcome the prima facie validity of a proof of claim. *In re Multiponics*, 622 F.2d 709, 714 (5th Cir. 1980). This evidence must be of a probative force equal to that of the creditor's proof of claim. *In re Simmons, supra* at 552. Once the objecting party has met this initial burden the claimant must then demonstrate the fairness and good faith of the conduct. *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939).

Defendant claims the note is unenforceable because it violates Tex.Penal Code § 38.06. This section states:

(a) A complaining witness commits an offense if, after criminal proceedings have been instituted, he solicits, accepts, or agrees to accept any benefit in consideration of abstaining from, discontinuing, or delaying the prosecution of another for an offense.

(b) An offense under this section is a Class A misdemeanor.

To recover under this statute, the Supreme Court of Texas has stated that the defendant must show that

the parties ... expressly or impliedly agree that anticipated prosecution of the offender will be supressed by one of the parties to the transaction; and a note and a deed of trust executed by one of the parties to the other, with the mere hope that their execution may avoid prosecution, are not thereby rendered illegal.

*Merrill v. Timmons*, 138 Tex. 250, 158 S.W.2d 278, 279 (1941)

■■■ Applying the law to the facts, defendant has not shown any evidence that H.Y. Robinson, the plaintiff, "suppressed" prosecution of Stanton Hinkley, either expressly or impliedly.

As to an express agreement, the promissory note makes no mention of any criminal indictment being suppressed.

As to an implied agreement, the facts presented are not of such a substantial or probative nature as to support a conclusion of compounding. Mr. Hirtz stated:

I'd been a prosecutor in Harris County for four years and I was very careful with my clients, with Mr. Crawford and with Stanton Hinkley that all a complainant in a criminal case can do is to request the state to take a certain action, if restitution is made. The decision is that of the sovereign. It doesn't belong to the complainant.

Tr. 28–29

Hirtz also stated:

the understanding that we had after the Defendant made the offer of restitution

was that if he made the restitution, Mr. Robinson would request the District Attorney to dismiss the indictments.

Tr. 53.

To rebut this evidence, Stanton Hinkley stated:

> The only thing that was in my mind was the fear of going to prison and that overrode everything else and that's why I signed the note.

Bruce Hinkley stated he would not have signed the note if he had not been in fear of his father's going to prison. Tr. 68.

Bruce Hinkley may have believed that his father would go to jail if he did not sign the note but this does not render the plaintiff's action illegal. The promissory note may have been Stanton Hinkley's final hope to avoid incarceration and this hope, shared by his son, does not show that the plaintiff's suppressed the criminal prosecutions. The only documentary evidence, the letter of June 14, 1972 is clear as to the fact that it is only a "request". The fact that Mr. Hirtz may have been working with the District Attorney of Walker County on the Hinkley case does not, in and of itself, elevate his conduct as satisfying the illegality standard. For these reasons, this Court must conclude that the contract is not illegal under Texas law.

*Duress*

Hinkley argues that the note is void because he signed it under duress. Texas law defines duress as follows:

> Duress is a question of fact and is the threat to do some act which the party threatening has no legal right to do. Such threat must be of such character as to destroy the free agency of the party to whom it is directed. It must overcome his will and cause him to do that which he would not otherwise do, and which he was not legally bound to do. The restraint caused by such threat must be imminent, and must be such that the person to whom it is directed has no present means of protection.

*Shurtleff v. Giller*, 527 S.W.2d 214, 216 (Tex.Civ.App.—Waco 1975, no writ) (citations omitted)

Defendant has produced insufficient evidence on this theory as well. Bruce Hinkley testified that he told Mr. Hirtz to go to hell, that he could not bully us around. Tr. 39. The evidence showed that Bruce Hinkley signed the note at a time when he had been working 38 hours continuously and that his father pressured him with the notion that he would go to jail if he did not sign it. Hinkley also testified that at the very time he signed the note, he exercised his free will by calling Mr. Hirtz and reached his secretary, who stated that his father was as good as jailed if he did not sign the note. A threat from a secretary, even if the Court would find this testimony credible, does not rise to the level of a threat that overcame Hinkley's will and left him with no present means of protection. At that time, Hinkley had the option to speak with an attorney in order to protect his interests rather than exercising his free will by calling Mr. Hirtz. The fact that he chose not to does not raise the conduct of Robinson to the level required for duress. This conclusion is reinforced by the educational level of this defendant. As mentioned earlier, Bruce Hinkley was a cum laude graduate of both Rice University and Baylor College of Medicine as well as a member of the American Medical Association.

*Lack of Consideration*

Debtor Bruce Hinkley argues the note is invalid due to a lack of consideration. In his ruling denying summary judgment Judge Patton ruled:

> Section 3.408 of the Tex.Bus. & Com. Code Ann. (Vernon 1968) states that lack of consideration is not a defense against an instrument given in payment of or as security for an antecedent obligation. Official comment 2 to the same section indicates that the antecedent obligation need not be owed by the maker; it may be the obligation of a third party. Plaintiff claims defendant signed the note as restitution for a loss plaintiff suffered at the hands of defendant's father. Section

3.408 would thus make consideration on the note unnecessary. Defendant, for his part, contends that he signed the note only to keep his father out of jail. If this is true the note would be invalid because of duress. A fact issue thus exists as to the precise reason why defendant signed the note.

There may have been consideration for defendant's signing in any case. Discharge of the obligation of a third party to make restitution is valid consideration for a contract or promissory note provided there is no duress or illegality. Palmer, 2 Law of Restitution § 9.11 (1978). The contract or promissory note will be rescinded however when the signature was made under duress. *Id.* Whether or not there was consideration thus involves a fact issue—the presence or absence of duress and illegality.

■ Since the court finds that no duress or illegality has been proven, there is consideration under Tex.Bus. & Comm. Code 3.408 (Vernon 1968).

*Discharge of Accommodation Party*

Defendant's next argument is that he signed the note as a surety and not a co-maker, and as a surety, plaintiff discharged his obligation when he discharged the principal without the surety's permission. Defendant must first show that he did not sign the note as a co-maker. The Uniform Commercial Code provides that the following rules of construction apply to every instrument:

(5) Unless the instrument otherwise specifies two or more persons who sign as maker, acceptor or drawer or indorser and as a part of the same transaction are jointly and severally liable even though the instrument contains such words as "I promise to pay."

"[I]t is presumed that one signs as a co-maker unless the suretyship relationship between the co-signors appears on the face of the note" *Caldwell v. Stevenson,* 567 S.W.2d 278, 280 (Tex.Civ.App.—Austin 1978 no writ). Bruce Hinkley has the bur-

den of proving otherwise. *Retamco, Inc. v. Dixilyn-Field Drilling Co.,* 693 S.W.2d 520, 521 (Tex.App. [14th District] Houston 1985); *Caldwell v. Stevenson* 567 S.W.2d at 280.

Applying the law to the facts, the promissory note recites that the signatories, "for value received, jointly and severally, promise to pay ...." The signatures are all individual signatures. This is not a case where Bruce Hinkley signed in a representative capacity. *See A. Orda & Son v. Madera,* 687 S.W.2d 83, 85 (Tex.Civ.App.—Houston [1st Dist.] 1985)

■ Since the instrument on its face does not indicate that Hinkley signed as a surety, and insufficient evidence, if any, was introduced on this point, the Court holds that Bruce Hinkley was a co-maker. As a co-maker, the defense of discharge of the surety for failure to prosecute the principal is not available when all the signatories on the note are deemed principals. Therefore, the defense of Hinkley is rejected as without merit because he is not in the position of a surety. *See* 3.606 comment 1.

*Conclusion*

Robinson filed a proof of claim in the Bruce Hinkley bankruptcy case in Oklahoma. This adversary proceeding centers around the allowance or disallowance of the proof of claim filed in the bankruptcy case. The Court rules that the defendant debtor Bruce Hinkley has produced insufficient evidence to support a finding that the claim of Robinson is unenforceable under Texas law upon the theories of illegality and duress. The Court also holds that there was consideration on the promissory note and that the defendant has not overcome the presumption that a party signs a note as a co-maker unless a surety relationship appears on the face of the note. This being the case, the defenses which a surety can assert are not available to this defendant and are rejected. Defendant's statute of limitations argument is rejected and his motion for default judgment is DENIED.

Defendant has no right to a jury on a claim dispute in bankruptcy court and the defendant's jury demand is stricken *sua sponte.*

Plaintiff's claim is allowed in full as a fair and equitable claim under equity jurisprudence. Judgment will be entered in accordance with this opinion. This opinion constitutes the findings of fact and conclusions of law required under Bankr.R. 7052.