**In re DISTRIGAS CORPORATION, Debtor.**

**Bankruptcy No. 85–1082–HL.**

United States Bankruptcy Court, D. Massachusetts.

April 2, 1987.

Joseph I. Schindler, Friedman & Atherton, Boston, Mass., Trustee.

Shearman & Sterling, New York City, and Peter A. Fine, Choate, Hall & Stewart, Boston, Mass., for Sonatrach.

C. Hall Swaim and Lisa A. Miller, Hale & Dorr, Boston, Mass., for DOMAC.

## MEMORANDUM

HAROLD LAVIEN, Bankruptcy Judge.

In this Chapter 7 bankruptcy proceeding, the trustee, as joined by Societe Nationale Pour la Recherche, la Production, le Transport, la Transformation et la Commercialisation des Hydrocarbures ("Sonatrach"), seeks to have the claim of Distrigas of Massachusetts Corporation ("DOMAC") disallowed under 11 U.S.C. § 502(b)(1).

## BACKGROUND

On September 30, 1985, Distrigas Corporation (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Chapter 11 case was converted to one under Chapter 7 by Court order dated October 29, 1986. The debtor appealed the Bankruptcy Court's conversion order to the District Court of Massachusetts, which affirmed on December 15, 1986. The debtor thereafter appealed the District Court's order to the First Circuit Court of Appeals. That appeal is pending.

Prior to the commencement of this bankruptcy proceeding, the debtor imported liquified natural gas ("LNG") under a long term contract with Sonatrach, the national energy company of Algeria, and immediately transferred such LNG to DOMAC. DOMAC then sold the LNG to various utilities. These various sales took place under authorization and tariffs established by the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act, 15 U.S.C. 717, *et seq.*

As part of its bankruptcy petition, the debtor submitted a Statement of Liabilities. Listed thereon was DOMAC as an unsecured creditor, in the amount of $262,732.10, on the basis of a "purchase gas cost adjustment credit."[1] The debtor filed an amendment to its schedules reflecting an increased unsecured debt to DOMAC since the time of the original filing totalling $523,251.07, due to subsequent freight ad-

---

1. As noted on debtor's Statement of Liabilities, "this amount reflects a rolling adjustment credit, primarily for the six month period ending May, 1985, that will dissipate when amortized pursuant to FERC regulation, by the FERC in the process of fixing a price for liquefied natural gas to be effective on January 1, 1986 for the succeeding six month period."

justments regarding 1985 shipments of LNG.

DOMAC makes the unsubstantiated assertion that pursuant to the purchase gas adjustment regulations of FERC, it is entitled to the excess monies the debtor collected from it over the amount payable by the debtor to Sonatrach, the $523,251.07 figure.

## FINDINGS OF FACT

Prior to the commencement of this bankruptcy proceeding, the debtor purchased LNG from Sonatrach, under a long term contract. Upon the arrival of the LNG in Everett, Massachusetts, the debtor transferred title of the LNG to DOMAC, pursuant to a "requirements contract" between these two entities. The transfer of Algerian LNG from the debtor to DOMAC, was the debtor's sole business activity, a pass-through transaction upon which it realized no profit. DOMAC maintained the facilities at Everett for reception and storage of the gas and sold the LNG to customers in New England, New York, and New Jersey.

Debtor and DOMAC are both wholly owned subsidiaries of the Cabot Corporation. Debtor was incorporated in 1969 with a total capitalization of $1,000; DOMAC was incorporated under a different name in 1971 with a total capitalization of $1,000. DOMAC's main asset is the Everett, Massachusetts LNG terminal. Debtor has no assets other than $12,400,000 which it owes to Sonatrach for LNG it received in 1985 and some land in New Jersey which, under a stipulation to resolve an environmental problem, is being transferred to Koppers Company. Both corporations maintain offices at the same address. Their phone numbers are answered by the same person and with the phrase, "Cabot Corporation." They call themselves "the Distrigas/DOMAC enterprise" whose only business is the importation for sale and resale of Algerian LNG. They share the same directors and officers.

Debtor has no employees of its own but, rather, has all corporate services performed for it by employees of DOMAC. A formal record of the "debts" owed by one company to the other was not maintained. The companies use their letterhead interchangeably. In some instances, the companies view their legal obligations as the same. Both companies are represented by the same counsel.

The debtor has imported no LNG since the 1985 shipment. Other than the present claimant, the debtor has no creditors except Sonatrach, attorney fees, and the State of New Jersey whose claim has been settled by stipulation.

## LEGAL DISCUSSION

The "allowance or disallowance of claims against the estate ..." are core proceedings. 28 U.S.C. § 157(b)(2)(B).

The ability of the bankruptcy judge to rule on claims against the estate is central to the bankruptcy system. *In re Werth*, 54 B.R. 619, 623 (D.Colo., 1985).

> The court may inquire into the conscionability of a claim, *In re Elkins-Dell*, 253 F.Supp. 864, 867, 869 (E.D.Penn.1966), it has full power to inquire into any claim asserted against the estate and to disallow it if the claim is without lawful existence. *Peter v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed.2d 281 (1939).

*In re Werth, supra*, 623. Some courts have utilized a two-step approach, analyzing claims first on legal grounds, and then, equitably.

> The bankruptcy court must first determine that the claim is cognizable as a legal obligation when viewed within the context of nonbankruptcy and bankruptcy laws, and second that the effect of the allowance of the claim in the bankruptcy proceedings would be just and fair in relation to other creditors' under principles of equity jurisprudence.

*In re Beverages International, Ltd.*, 50 B.R. 273, 279 (Bankr.Mass.1985) quoting A. DeNatale and P. Abram, *The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors*, 40 Business Lawyer No. 2, 417, 419 (1985).

A party objecting to a claim has the initial burden of presenting factual evidence tending to defeat the prima facie

validity of a proof of claim, but not the burden of ultimate persuasion. 11 U.S.C. § 502(a); L. King, *3 Collier on Bankruptcy,* ¶ 502.01, 502–17. The burden of persuasion always remains on the claimant and, therefore, once there is evidence as to the invalidity of the claim, the burden rests on the claimant. *Id.,* 502–18. That is the case, here.

█ Sonatrach asserts, in support of the Chapter 7 trustee's objection, that under Massachusetts law, DOMAC and the debtor are alter egos and, therefore, DOMAC's claim is unenforceable because it represents at best, a "debt" that the debtor owes itself. Neither the debtor nor DOMAC can claim with credibility that they are not one and the same. They have the same address, directors, officers, telephones answered by the same person, and the same counsel. In fact, except as holder of FERC import license, the debtor performs no real business function separate from DOMAC, which provides all the employees and services. Unless the left hand is independent of the right hand, there is no arms-length negotiating. Or, for that matter, any negotiating at all unless Charlie McCarthy is independent of Edgar Bergen. In Massachusetts, one corporation may be deemed the alter ego of another:
> (a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.

*My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 233 N.E.2d 748, 752 (1968). The law of this District emphasizes that a determination of two related corporations as alter egos must include, among other things, "an element of injustice or fundamental unfairness." *See, In re WJM, Inc.,* 65 B.R. 531 (Bankr.Mass., 1986), *aff'd.,* Bankruptcy Appeal No. 86–3180–MA, slip op. (December 30, 1986), *citing DeWitt Truck Brokers v. W. Ray Fleming Fruit Co.,* 540 F.2d 681, 683, 687 (4th Cir.1976). Therefore, in determining whether or not to disregard the corporate entity, the factors of "pervasive control" or "confused intermingling" must be considered in terms of "injurious consequences."

Applying the law to the facts, it becomes extremely clear that there has been both pervasive control by these two companies over each other and a confused intermingling of their activities. Some of the aforementioned facts leading to a determination of pervasive control and confused intermingling of the corporations are the failure of the companies to observe corporate formalities (i.e., absence of formal financial bookkeeping for intracorporate transactions, and the corporate services of one company being performed by employees of the other company); the sameness of counsel, directors, employees, and corporate headquarters; interchangeable use of letterhead; and, in some instances, a view of identical legal obligations.

█ The injurious consequence arising from this pervasive control and confused intermingling of the debtor and DOMAC lies in an allowance of DOMAC's claim. Such an allowance would deplete debtor's estate at the expense of the other real creditor. If DOMAC's claim was allowed, payment out of debtor's estate to DOMAC would be that much less paid to Sonatrach and that much more the debtor, in effect, keeps for itself since, as demonstrated, debtor and DOMAC are one and the same. It would be wholly inequitable to allow DOMAC, the alter ego, to deplete debtor's estate by paying itself. The allowance of DOMAC's claim would give rise to a grave injustice due to the pervasive control and confused intermingling demonstrated to exist between debtor and DOMAC. Also, it should be noted that even if DOMAC were not an alter ego of debtor, its claim would

be unenforceable under nonbankruptcy law and, therefore, must be disallowed.

Under the FERC gas tariff regulations (18 CFR 154.38), the movement of LNG between Sonatrach (the supplier), debtor and DOMAC (the distributors), and the customers, involved a bookkeeping process of corresponding, pass-through debits and credits in the form of "rolling adjustments." These rolling adjustments were recorded on "purchased gas cost adjustment accounts" which (as debtor acknowledged in its records) would "dissipate when amortized pursuant to FERC regulation."

Had there been no termination of business by the debtor, the accounts between Sonatrach, debtor, and DOMAC, would have balanced out. When the next monthly shipment of gas arrived, Sonatrach would have credited debtor by reducing the cost of the next shipment. Debtor would have then, similarly, credited DOMAC by reducing the cost of the next shipment and DOMAC would, in turn, have passed along the adjustment to its customers by a reduction in the price of the next shipment. The FERC established tariffs did not provide for treating this adjustment in any other fashion. However, because the debtor ceased importing LNG, there were no new shipments to adjust and no vehicle on which the pass through could attach.

The process of rolling reimbursements was stopped. FERC regulations provide for such reimbursements only in conjunction with subsequent gas deliveries. In, the absence of future deliveries, there is no FERC authorized mechanism to readjust the rolling debits and credits between Sonatrach, debtor, DOMAC, and the customers. Therefore, the allowance of DOMAC's claim against debtor's estate would give DOMAC a windfall of more than $500,000. This unjust enrichment by DOMAC would be gravely unfair to Sonatrach and to the extent that, ultimately, there might be other creditors, is found to be wholly inequitable. Such a claim, at least until FERC makes some provision for it, has no legal tariff provision and remains, at best, a mere bookkeeping entry. It is not a debt and cannot rise to the status of a legal obligation of the debtor.

Disallowance of a claim by an alter ego is justified to prevent injustice. "The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside." *Pepper v. Litton,* 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (footnote omitted). The bankruptcy court, under its equitable jurisdiction, has the power to analyze the circumstances surrounding any claim and to disallow those claims that would not be fair or equitable to other creditors. *Id.,* 308, 309, 60 S.Ct. at 246 (footnote omitted). Moreover, a bankruptcy court may disallow a claim "by simply the violation of rules of fair play and good conscience by the claimant." *Id.* 310, 60 S.Ct. at 247.

### CONCLUSION

The evidence presented to this court strongly demonstrates that debtor and DOMAC are alter egos. DOMAC's "claim" does not have standing even if there were no alter egos. Such a detriment to the estate would afford DOMAC an unfair advantage and demonstrates a lack of fair play and good conscience by DOMAC regarding Sonatrach and any potential other creditors. DOMAC's claim is disallowed.