[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
The defendants in these companion cases have filed motions for summary judgment raising the same legal claims and based on the same factual setting. The court hereby files one memorandum of decision addressing each of the motions.
In March of 1992 the plaintiff suffered serious injuries when he fell from open balcony at a construction site located at a building project in Windsor, Connecticut.
The defendant Derekseth Corporation was the general contractor for the project. The defendant Mary Catherine Development Corporation was operating as the property owner.
The plaintiff is a partner in an independent contracting firm that was hired by the defendants to perform framing at the project site.
The plaintiff sought to recover worker's compensation benefits from the defendant Derekseth Corporation but the Commissioner found the plaintiff was not an employee of the defendant corporation and dismissed the plaintiff's claim for benefits. CT Page 3000
The plaintiff then initiated these actions against the defendants. They are based on negligence and in the defendants' view seek to bring a private cause of action as a result of alleged OSHA violations.
The defendants have filed motions for summary judgment. The defendants claim that as a result of the decision by the Workers' Compensation Commission the plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel. They also claim that the defendants owed no duty to the plaintiff to erect railings which could have prevented the accident since he was an independent contractor. The defendants also claim that the plaintiff seeks to base a cause of action on alleged OSHA violations, however, Connecticut does not allow a private cause of action based on such violations.
The standards governing whether a motion for summary judgment are well-known. Such a motion cannot be granted if there is a genuine issue of material fact but of course the mere assertion that there is such an issue will not avoid the granting of such a motion.
(1.)
The defendants first argue that the plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel. As noted the plaintiff filed a claim for workers' compensation benefits. A hearing was held at which the defendant general contractor and the plaintiff were both represented by counsel. In dismissing the plaintiff's claim and concluding the plaintiff was not an employee of the corporation the Commissioner made several findings. In finding number 12 the Commissioner stated the following:
 12. Derekseth had final authority for approval of the work product but did not control or direct the means or method of the partnership's work.
Summary judgment is an appropriate method for resolving a claim of res judicata or collateral estoppel, Jackson v. R.G.Whipple, Inc., 225 Conn. 704, 712 (1993). In deciding whether such a claim can be resolved as a matter of law a trial court must examine the pleadings, any affidavits, and documentary evidence submitted by the parties. Jensen v. Nationwide Mutual InsuranceCT Page 3001Co., 158 Conn. 251, 259 (1969). Regarding these two types of claim the court Jackson v. R.G. Whipple, Inc., 225 Conn. pp. 712-13 said the following:
 . . . the terms res judicata and collateral estoppel refer to the concepts of claim preclusion or issue preclusion respectively. Both claim preclusion and issue preclusion `express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest.' . . . Although claim preclusion and issue preclusion often appear to merge into one another in practice, analytically they are regarded as distinct. `[C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit.' (Internal quotation marks omitted.)
What appears to be raised here is a claim of issue preclusion. The defendants maintain that: "The question at the heart of the instant action will involve whether the Defendant, Derekseth Corporation, was in control of the work site in order to determine what duty, if any, the defendant owed to the plaintiff", (page 11 of defendant's brief). The defendant goes on to argue that the issues before the Workers' Compensation Commission and the court are "identical". Thus when the Commissioner found that the defendant corporation did not control or direct the means or method of the partnership work he was in effect finding that the defendant was not in control of the work site. The defendants rely on collateral estoppel to say that the plaintiff is precluded from relitigating this issue.
If that is so then according to the defendants the plaintiff was an independent contractor at the time of the accident and the defendants owed no duty to erect railings thereby ensuring a safe work site.
When and how does the doctrine of collateral estoppel apply? The defendants cite the case of Matter of Lombard, 739 F.2d 499 (CA 10, 1984) where at page 502 the court sets forth a four pronged test for determining the applicability of collateral estoppel to a CT Page 3002 case: (1) the issue previously decided must be identical with the one presented in the action in question (2) the prior action has been finally adjudicated on the merits (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. A predicate to the application of these tests is the assumption that the tribunal that decided the issue previously is of such a type that its decision could be said to have collateral estoppel effect on the court before which the doctrine is raised.
The court will discuss this last matter first then proceed to discuss the Lombard test. It is well-established that the decision of an administrative board or agency acting in an authorized capacity can have res judicata or collateral estoppel effect,Crochiere v. Board of Education, 227 Conn. 333, 342-43 (1993),Saporoso v. Aetna Life Casualty, 221 Conn. 356, 367 (1992),Carothers v. Capozziello, 215 Conn. 82, 94-95 (1990). Corey v.Avco-Lycoming Division, 163 Conn. 309, 317-18 (1972).
The question then becomes if the tribunal or administrative board or agency can make decisions or decide issues which have a preclusive effect on courts, have the requirements for giving such effect been met. The criteria set forth in Lombard really refer to the same tests noted in the Restatement (Second) Judgments, § 27. A document entitled "Finding and Dismissal" and signed by a Workers' Compensation Commissioner has been submitted. It indicates that after notice a hearing was held before the Commissioner and that at the hearing the plaintiff and defendant were represented by counsel. As to the issue decided by the Commissioner which the defendants argue has preclusive effect — "the defendant did not control or direct the means or methods of the partnership's work" — the defendant in this case was also a party before the Commissioner. Through counsel it had a full and fair opportunity to litigate the issue, and that issue was fully adjudicated on the merits. In this regard it would seem that the finding the Commissioner made regarding whether the defendant controlled or directed the means or method of the work done by the partners is one of the criteria on which he based his conclusion that the plaintiff was not an employee of the defendant Derekseth. This may not have been the only factor relied upon but it would be hard to describe it as a "nonessential" issue, cf Crochiere v.Board of Education, 227 Conn. at p. 343. The issue was apparently "recognized by the parties as important and by the trier as CT Page 3003 necessary to the first judgment", Restatement 2d Judgements, § 27 at comments; page 261.
But the real problem as to the relevance of a collateral estoppel argument in this case is not entirely addressed by the foregoing discussion. That problem more exactly revolves around what comment (c) of Section 27 of the Restatement calls the "dimension of the issue." In that subsection it says:
 One of the most difficult problems in the application of the rule of this Section is to delineate the issue on which litigation is, or is not, foreclosed by the prior judgement. The problem involves a balancing of important interests: on the one hand, a desire not to deprive a litigant of an adequate day in court; on the other hand, a desire to prevent repetitious litigation of what is essentially the same dispute. When there is a lack of total identity between the particular matter presented in the second action and that presented in the first, there are several factors that should be considered in deciding whether for purposes of the rule of this Section the `issue' in the two proceedings is the same, for example: Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings.
Or to focus on the matter from another perspective, what must be addressed is whether the first criteria set forth in Lombard has been met — issue preclusion can be applied only when "the issue previously decided is identical with the one presented in the action in question", 739 F.2d at p. 502. In other words the issue decided was that the defendant Derekseth did not control or direct CT Page 3004 the means or method of the work. Is that identical for collateral estoppel purposes with the issue of whether the defendant had or ought to have had control of the work site and its safety — the work site at which the partnership directed the means or method of its work? That is, let us assume from prior understanding between the parties or as the result of explicit agreement on this project that the defendant had the responsibility to erect railings or other safety devices — would that have precluded the Commissioner from concluding that the plaintiff was not an employee of the defendant corporation although apart from safety measures the plaintiff and his partner controlled or directed the means or method of their work? Does the phrase "means or method" by which work is accomplished mean the "way" it is done? If that is so what in fact does the way the work is done have to do with putting a safety railing around the work area? On the basis of the mere findings of the Commissioner submitted to me how can I determine these issues. As comment f to section 27 of the Restatement notes extrinsic evidence could have been introduced to clear up any ambiguities as to what the Commissioner decided and the evidence presented to him regarding an issue on which he then made a finding. As the comment further notes: "The party contending that an issue has been conclusively litigated and determined in a prior action has the burden of proving that contention." In any event there is a fundamental problem about applying the doctrine of collateral estoppel. I do not know the relationship between the issue decided by the Commissioner in Finding 12 and the question as to whether or not that issue has a bearing on what may be a separate issue — who had control of the work site and is that issue necessarily related to the finding made.
In other words framing the question in terms of one of collateral estoppel merely presents the actual issue that has to be decided but doesn't help decide it. The issue that has to be decided is what if any duty does a corporation in the defendant's position have to ensure work site safety when an independent contractor is involved? Nothing in the Commissioner's decision requires a court to conclude that the duty of the employer of an independent contractor to insure work site safety is incompatible with the notion of finding that the entity so employed is an independent contractor in the first place.
Does the Commissioner's decision really do anything more than provide a basis to say that insofar as the partnership controlled and directed the means and method of work, the partnership was an independent contractor? What then standing alone follows from CT Page 3005 this? That for me at least is the statement of the problem or question to be decided not the answer or solution to the question as to whether this motion for summary judgment should be granted.
(2.)
If then it is established that the defendant Derekseth Corporation is the employer and the plaintiff is the employee of an independent contractor hired by Derekseth, what duty, if any, does Derekseth owe to the plaintiff? The plaintiff's claim against Derekseth lies in negligence and as the defendant notes the elements of a negligence claim are duty, breach and causation, Catzv. Rubenstein, 201 Conn. 39, 44 (1980). The defendant's basic claim is that it owed no duty to the plaintiff: "If a general contractor hires an independent contractor to conduct work on the premises, and delegates all rights to control any part of the work to the independent contractor, the general contractor owes no duty to the independent contractor or the independent contractor's employees" (page 17 of 12/22/94 brief of Derekseth).
The predicate to the defendant's position is the status of the partnership for which the plaintiff worked as being that of an independent contractor. In Connecticut Law of Torts, (3d ed), Wright, Fitzgerald Ankerman § 67 at page 176 it says:
 An independent contractor has been defined as one who contracts to produce a certain result, in his own way, without interference or supervision from the owner (but the owner may exercise a limited degree of control or give the contractor instructions on minor details without destroying the independent character of the contractor). However, when the contractor loses his independence, the employer of the contractor becomes vicariously liable for the torts of the contractor. This the ultimate query is whether the employer has the right of general control over the means and methods of work. This is ordinarily a question of fact for the trier.
The Workers' Compensation has concluded the plaintiff's partnership controlled the means and method of work. At the very least res judicata or collateral estoppel would preclude questioning that finding. If the partnership was an independent CT Page 3006 contractor then according to the defendant, it owed no duty to the plaintiff. The partnership's status as an independent contractor precludes liability to an employee of an independent contractor. The lockstep analysis of the defendant is asserted to be "universally accepted." The defendant relies on cases from other jurisdictions, Hooper v. Pizza Galli Constr. Co., 436 S.E.2d 146
(N.C. 1993), Agricultural Warehouse Inc. v. Nuvalle, 759 S.W.2d 691
(Tex. 1988), Feeney v. Dover Country Club Apartments, Inc.318 A.2d 619 (Del. 1974). It also relies on Ray v. Schneider,16 Conn. App. 660 (1988).
But I do not believe the question before the Court can be so easily resolved. The problem, at least as I see it, is that what does it mean to say that the purported independent contractor has "general control over the means and method of work." Under certain circumstances can an owner or employer of an independent contractor be held responsible for its own negligence that causes harm to an independent contractor's employee even though the independent contractor had general control over its work? In other words if an independent contractor has general control over the means of methods of accomplishing its work does that define the whole universe of ways in which one of its employees can be injured on the job? Can an owner still owe a duty of care to such an employee that is based on acts or failures to act which have nothing to do with or are only tangentially related to the means and methods by which an independent contractor accomplishes the particular job for which it was hired?
Ray v. Schneider, 16 Conn. App. 660 (1983) is as interesting for what it does not say as for what it does say. At page 663 the court says: "Ordinarily, an employer of an independent contractor, absent an act of negligence on his own part is not liable to others for the negligent acts of the contractor." The court on the following page goes on to note that there are "several exceptions to the nonliability rule." Those mentioned by the court are situations where the employer retains "control of the premises or supervises the work of the contractor" or where the work to be performed is "inherently dangerous" or where the employer has a "nondelegable duty to take safety precautions imposed by statute or regulation." The court then in broad language framed the problem before it as one of deciding "whether the employees of the independent contractor also fall within those class of persons protected by the exceptions to the nonliability rule",16 Conn. App. at pp. 664-65. The only exception the court discussed in its opinion was that created for inherently dangerous activity — the CT Page 3007 court decided employees unlike members of the general public could not take advantage of this exception. The general comment made about the employee's ability to rely on the other exceptions are therefore dicta. But it is true that the reasoning the court engaged in as to the exception it discussed applies as well to the other exceptions. The policy reasons given to not allow employees of the independent contractor to sue the latter's employer even given these exceptions are intertwined with the general policy goals of the Workers' Compensation Act, see discussion at page 670.
However, it is important to examine the premises of the discussion that the court engaged in. What the court made emphatically clear is that it was talking about the imposition of "vicarious" liability. Prior to even alluding to the "exceptions" to the nonliability rule for independent contractors the court noted that any employer of an independent contractor is not liable to others for the independent contractors negligence "absent an act of negligent on his own part", Id. page 663 — it is in that context that the court went on to discuss the exceptions to this rule and whether they applied to employees of the independent contractor as well as members of the general public. One of the reasons the court gave for its ruling barring recovery against a general contractor by an independent contractors employee on a vicarious liability theory is based on what it called "a fundamental principle of our tort law." That principal is that ordinarily an individual is liable for compensating harm only when the harm is caused by that person's "own fault". "The principle of liability for individualized fault is the norm, whereas vicarious liability `is regarded as the exceptional solution.,'", 16 Conn. App. at page 669.
Thus there are some sections in the Restatement (Second) Torts which recognize that liability can be imposed on the employer of the independent contractor for its own negligence even though the independent contractor remains such in that it controls the general means and method of work.
 § 410. Contractor's Conduct in Obedience to Employer's Directions
 The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, CT Page 3008 as though the act or omission were that of the employer himself.
 § 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor
 One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
 (a) fails to provide in the contract that the contractor shall take such precautions, or
 (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.
 § 414. Negligence in Exercising Control Retained by Employer
 One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
The plaintiff has submitted excerpts from transcripts and an affidavit that might support the imposition of a duty on Derekseth to the plaintiff who was an employee of an independent contractor. There doesn't seem to be any dispute that the nature of the work performed here although not perhaps capable of being described as inherently dangerous, did present the risk of injury if certain safety precautions were not taken such as the enclosure of a railing around the immediate work site. Did Derekseth have a duty to make sure such a railing was installed?
In paragraph 12 of his finding the Commissioner, as perhaps CT Page 3009 noted too many times found that Derekseth "did not control or dire it the means or method of the partnership's work." But after all what does this exactly mean? It at least means the partnership controlled the operative part of the work of actually installing the framing. But what does it say about the installation of safety devices around the actual work site — what does such an activity have to do with the actual erection of the framing? Certainly the framing could have been erected without the installation of safety devices. All that was submitted to me was a two page finding of the commissioner; I have no way of knowing whether the Commissioner took into account general work site control or safety issues when he made finding 12. The burden is on the defendant to submit extrinsic evidence if what was actually litigated can't be deduced from pleadings or other material submitted to support a res judicata or collateral estoppel argument, see Restatement (Second) Judgments § 27, comment f.
Beyond that in his affidavit the plaintiff alleges all wood and other supplies for the job were submitted by Derekseth. Presumably any safety devices would have to be constructed using these or some other supplies. But the affidavit goes on to allege the only supplies provided were those sufficient to complete the structure being built pursuant to plans submitted by the defendant. The partnership was required to conserve building supplies according to the affidavit. The affidavit goes on to allege a tight building schedule was imposed by Derekseth, the job had to be completed pursuant to a certain time schedule and if it was not other framers would be brought in with a resulting loss to the partnership. The partnership workers were sometimes shifted from job site to job site. The affidavit goes on to claim the plaintiff or the partnership had no authority to erect or install safety devices at the work site even if they were to be afforded the time to do so. In fact Derekseth officials would direct what safety devices were to be installed and when.
I don't agree with the plaintiff to the extent that he argues that merely because the employer takes an interest in safety concerns and installing safety devices that means whenever an accident happens an employee of an independent contractor has a negligence claim against the employer or owner. That would lead to a terrible policy result — employers or owners would avoid taking any steps to ensure safety on the job unless they were specifically required to do so by statute or regulation. But where there is evidence that the employer or owner had control of the work site as to the installation of safety devices and actively exercised that CT Page 3010 control to the preclusion of efforts by independent contractors to install safety devices, then evidence of the prior history of the installation of safety devices is relevant on the issue of work site control for the purposes of considering whether liability should be imposed on the general contractor or owner for injury to an employee even of an entity that can otherwise be characterized as an independent contractor. The problem as I see it with the defendant's position is that I have no way of determining on the record before me as a matter of law that in this particular case the purported lack of authority or ability to install safety devices by the independent contractor is necessarily inconsistent with a finding that on the other hand the independent contractor had control over the means and methods of its work. It need not be so as the Restatement (Second) Torts seems to suggest and nothing in Ray v. Schneider, supra precludes the possibility.
Furthermore none of the concerns raised in Ray v. Schneider
are applicable under the foregoing analysis because it doesn't rest on notions of vicarious liability. How can the employer or owner be heard to complain if any injuries resulting to the injured employee of an independent contractor are even in part due to their actions or failures to act or their creation of a job site and patterns of work activity which in effect prevented the installation of safety devices. In the admittedly narrow window of liability where an employer or owner could be held liable to an employee of an independent contractor for failure to abide by a standard of care and where such a result doesn't necessarily conflict with the finding of an independent contractor relationship, why should the employer or owner escape responsibility for its actions. Such an employer or owner would then escape the costs of workers' compensation insurance because the worker is not its employee and avoids responsibility to the worker by relying on the fact he or she is an employee of an independent contractor. Admittedly this might subject the employer of an independent contractor to greater liability than he would have had if he had used his own employees on the job. However, where such an employer is found to be at fault I do not think we should subject the issue of worker safety to a cost-benefit analysis where in the employer would weigh the cost of using its own workers against the benefits of continuing to use independent contractors and is then allowed to factor out injury caused by its own actions.
The cases cited by the defendant are not controlling on the questions presented by this case. Agricultural Warehouse Inc. v.CT Page 3011Nuvalle, 759 S.W.2d 691 (Tex. 1988) states general principles that are probably the law in our state — thus it in effect holds that an owner of land (or a general contractor) has "no duty to see that an independent contractor performs its work in a safe manner." But immediately preceding this statement it qualifies it by saying "in the absence of `control,'" id. p. 695. The case then doesn't deal with the matters just discussed by the court. There are no facts recited by the court to indicate what "control" (whatever that means) the owner or general contractor in that case retained over the work site or perhaps more importantly what actions it might have taken to effectively impair the ability or opportunity of the independent contractor to install safety devices. In Seeney v.Dover Country Club Apartments Inc., 318 A.2d 619 (Del. 1974) the employee attempting to sue the property owner was working for an independent contractor hired to dig ditches and install pipeline. The court at page 622 explicitly said:
 The undisputed evidence further shows that the method of digging the ditches, including the use or non-use of shoring, as well as the manner of installing the pipeline, were responsibilities that rested exclusively on Marvel, the independent contractor. It is equally evident that Marvel alone was responsible for the safety of his employees and the decision not to use shoring in the ditch where plaintiff was injured was one that Marvel was responsible for making.
Seeney was written after a full trial on the merits. I cannot say on the basis of the material brought to my attention in this motion there is no genuine issue of fact based on the considerations referred to in Seeney.
 Hooper v. Pizzagalli, 436 S.E.2d 145 (N.C. 1993) in holding an employee of a subcontractor cannot recover against a general contractor because one who employs an independent contractor is not liable for the independent contractor's negligence unless the employer retains the right to control the manner in which the contractor performs its work. But again there is confusion raised by this case since the court then notes the subcontractor "was to provide all labor, materials and equipment necessary to perform the work," id. p. 149. That was not the case here and the fact that it was not so is arguably directly related to the issue of the duty to install safety devices. General observations by a North Carolina CT Page 3012 court on the liability of a general in a situation like this turning on whether it "retains the right to control the manner in which the contractor performs (its) work," id. p. 149 are not helpful because resolution of the whole issue here is fact based.Belliveau v. Greci, 21 Conn. Sup. 501 (1960) just doesn't provide enough facts necessary to make it helpful to this analysis.
(3.)
On a motion for summary judgment the defendants seek to attack an allegation in one paragraph of the complaint that purportedly alleges violations of 29 C.F.R. § 1926.20(a)(1). Connecticut of course doesn't recognize a private cause of action for OSHA violations. The plaintiff doesn't dispute this. Nor does the plaintiff contend that references to OSHA standards can be used as a basis for an instruction on negligence per se. It is difficult for me at least on the one hand to hold a statute creates no private cause of action and then on the other hand say a negligence per se instruction is warranted. But all the plaintiff says here is that the OSHA standard can be referred to by the trial judge in formulating his or her charge and can be used as evidence of the appropriate standard of care, Wendland v. Ridgefield ConstructionServices, Inc., 184 Conn. 173 (1981).
On the basis of the foregoing I deny the defendants' motions for summary judgment in CV94-533814S and CV94-0535457S.